[Dryer v. Abercrombie.]

# Dryer *v.* Abercrombie.

*Trial of Right of Property under Attachment.*

1. *Trial of right of property; material issue.*—In general, on the trial of the right of property, the inquiry, whether the defendant in the process is indebted to the plaintiff, is immaterial and foreign to the issue, the material issue being whether the defendant in the process, had, at the time of the levy, such property in the goods as is subject to levy and sale; and this is so in attachment (under sections 3252–3 of the Code), which can not be dissolved, quashed or abated, on proof that none of the grounds for suing it out, in fact, existed.

2. *Liens of landlord, and for advances; when attachment to enforce, improper.*—There are, however, liens, such as the landlord's lien and the lien for advances, &c., enforceable by attachments, which are not dependent on the levy for their existence, but exist by law; and attachment is given as a remedy for their enforcement; these liens depend on the existence and nature of the debt, and if these do not come within the statute, attachment to enforce the lien is improper, and, on proper motion and proof, the attachment should be dissolved, on the ground that the debt is not of a class for which such attachment would lie.

3. *Attachment to enforce lien for rent and advances; how defeated.*—Where an attachment is sued out to enforce the lien for rent and advances, and levied on crops grown on the rented premises, the person in possession, deriving title from the tenants, may interpose a claim to try the right of property, and defeat the attachment on proof that the debt has been paid, and this, too, without regard to the failure of the debtor to interpose any defense to the attachment suit.

APPEAL from the Circuit Court of Macon.

Tried before the Hon. JAMES E. COBB.

J. C. Abercrombie, the appellee here, sued out an attachment against one W. A. Smith, for rent and advances alleged to be due for the year 1876, and had the same levied on two bales of cotton alleged to have been grown on the rented land during said year. Dryer, the appellant, interposed a claim, under the statute, on account of a mortgage executed by said Smith to him on the fourth of March, 1876, and recorded two days thereafter. Said mortgage was made upon the crop to be grown that year to secure the payment of certain debts due by Smith to Dryer.

The claimant, Dryer, proved that he was in possession of said cotton at the time of the levy, claiming the same under said mortgage. He then offered to prove that the rent and advances for which said attachment was sued out had been fully paid to Abercrombie from other cotton than that levied on, stating that the purpose of such testimony was not to

attack said defendant for rent and advances, except so far as to show that the superior lien of Abercrombie, given him by the law for rent and advances, had been satisfied before the issuance of the attachment, and thereby to establish his claim and title, under the mortgage, to be superior to any right of Abercrombie to condemn said cotton. The plaintiff objected to such evidence on the alleged ground that Dryer could not show the payment of the rent and advances for the purposes mentioned by Dryer as his reason for introducing such evidence. The court sustained the objection and Dryer excepted. Other evidence, not necessary to be noted, was offered by Dryer and ruled out by the court; to which ruling exceptions were reserved. The several rulings of the court aforesaid, are now assigned as error.

W. C. BREWER, for appellant.—1. It has been adjudged, in many cases, that ordinarily the claimant in the trial of the right of property cannot litigate any question of indebtedness between the plaintiff in execution or attachment and the defendant.—*Carlton v. King*, 1 Ste. & Port. 472; *Stone v. Stone*, 1 Ala. 582; *Butler & Alford v. O'Brien*, 5 Ala. 316; 6 Port. 447; 5 Port. 182; 3 Port. 401; 23 Ala. 369, and other cases.

2. In the case (manuscript) of *Boswell & Wooley v. Carlisle, Jones & Co.* the court settle the doctrine that the claimant in this case could have insisted that the plaintiff was not, in fact, the landlord. That is, if the claimant showed, or proposed to show such title and right to possession as made it important to the establishment and protection of that title, that the character of landlord should be controverted. But the claimant could no more controvert the character in which a plaintiff sued, or the nature of right he sought to enforce, than he could deny the indebtedness, under the decisions before quoted, unless he showed some reason why such denial was important and material to the making out of claimant's title to property. And if claimant can, for this reason, controvert the character in which plaintiff sues, as that of landlord for example, there can be no reason against his showing a state of facts (as, for instance, the lien had ceased to exist,) which would bring us in effect to the same conclusion. Indeed, the distinction here insisted on, between showing that there was no debt to sustain the process, and the question of indebtedness at a time, certain, before the issuance of process, when such indebtedness involves the title insisted on and set up by the claimant, is believed to have been fully recog-

[Dryer v. Abercrombie.]

nized and approved in *Boswell & Wooley v. Carlisle, Jones & Co., supra.*

ABERCROMBIE & GRAHAM, and J. A. BILBRO, *contra.*—
1. It is settled, by decisions of remarkable frequency, that for the purpose of the trial of the right of property, the attachment is sufficient evidence that the plaintiff was a creditor of the defendant, and the claimant can not question the *validity or invalidity of the plaintiff's demand.—Pulliam, Wills, Rankin & Co. v. Newberry's Administrator,* 41 Ala. 168, and authorities there cited.

2. As announced in *Stone v. Stone* (1 Ala. 582), "a payment of the execution or attachment is as entirely without the issue as any other matter which can be conceived."

STONE, J.—1. The issue in our statutory proceeding, which we denominate a trial of the right of property, is an averment by plaintiff that the property is subject to the execution [or attachment, as the case may be], and a denial of the truth of that averment by the claimant. On such issue, as a general rule, the inquiry, whether the defendant in execution or attachment is indebted to the plaintiff, is foreign and immaterial. The inquiry usually is, did the defendant in the execution or attachment, at the time the lien accrued, or the levy was made, own such property in the goods as is the subject of levy and sale under the process?—See *Pulliam, Willis, Rankin & Co. v. Newberry,* 41 Ala. 168, 175, and authorities cited; 2 Brick. Dig. 479, 480, §§ 63, 67, 69, 70, 71, *et seq.* Such is the rule where the right to sue out the attachment is not at all dependent on the character of the debt, to collect which it is resorted to; debts which exert no lien, till execution is delivered to the sheriff, or, till attachment is levied.—Code of 1876, §§ 3252–3. These attachments lie to enforce any debt, money demand, or just claim for damages, and may be sued out on any one of eight distinct grounds. Attachments thus sued out can not be quashed, abated, or dissolved, on proof that none of the eight grounds for suing it out in fact existed. If there be a debt or legal liability, the plaintiff will be entitled to judgment, no matter how groundless his attachment.—Code of 1876, § 3317.

2. But there are other liens, enforceable by attachment, which rest on entirely different principles from those we have been discussing. Such liens do not depend on the levy of attachment for their existence. They exist by law, and

attachment is given as a remedy for their enforcement. They depend on the existence and nature of the debt; and attachment is given only as a means of securing and preserving the property, and subjecting it to the debt for which it thus stands encumbered under the statutes. The former confers the lien; the latter simply enforces it. Sections 3286 and 3467 declare liens of the latter class. Attachment for enforcing these law-given liens is given by sections 3472 and 3288 of the Code of 1876; sections 2961 and 1860 of the the Revised Code.—See *Wilkinson v. Ketler*, at present term. The grounds for suing out the attachment for enforcing these liens were formerly only two; they are now three. It will be seen that they are entirely different and less comprehensive than those for which ordinary attachments will lie. But the character of the demand enters into the ground of the attachment. It must be a debt which the statute declares operates a lien on the property levied on; and if it be not such debt, then, although one or all the grounds for such attachment maintained in section 3472 may exist, the attachment would be improper; and on motion made and proper proof, the attachment would be dissolved on the single ground that the debt was not of a class for which such attachment would lie.—*Brown v. Coats*, December term, 1876.

3. J. C. Abercrombie sued out an attachment against Smith, for rent and advances alleged to be due for 1876, and had the same levied on cotton alleged to have been grown on the rented land, during that year. Dryer interposed a claim under the statute. Dryer's claim rested on a mortgage executed by Smith to him, bearing date March 4, 1876, and recorded in the probate office of the county two days afterwards. This mortgage conveyed the crop to be grown that year to secure the payment of certain recited debts. To the extent that the statutes in force at the time conferred the right, Abercrombie had a first and paramount lien on the crop grown on the land rented to Smith. Subject to this paramount first lien of Abercrombie, if shown, Dryer's mortgage, if based on a debt from Smith, would come in as a second lien. If Abercrombie's paramount lien had been previously discharged by payment; or, if he had received of the crop grown on the land enough to discharge this paramount lien, and had applied it to any other debt or use, then, so far as Dryer was concerned, Abercrombie's lien was canceled, and Dryer's lien would come next in play; and whether Smith defended the attachment suit or not, this could not affect or impair Dryer's rights. It was *res inter alias acta.*

The testimony offered by Dryer, tending to show that Abercrombie had been paid for his rent and advances, should have been received. It tended to negative the ground on which his attachment and right to the property rested—namely, the existence of a debt which operated a lien on the cotton, paramount to Dryer's mortgage lien. It was correctly said in *Tucker v. Adams* (52 Ala. 254), that in the trial of a suit commenced by attachment, it is not permissible to disprove the truth of the ground on which the attachment issued. That is not the proceeding to reach such defect. The questions of merit in that case and in this are entirely different.

Reversed and remanded.