# Wheat *v.* Watson.

## *Trial of Right of Property under Attachment.*

1. *Rent of lands for cultivation; duty of tenant to cultivate; landlord, entitled to what rent.*—Where land is rented for cultivation upon the agreement to pay a certain share of the crops, the tenant should not allow the land to lie idle, but must cultivate it with proper industry; and the landlord is entitled to demand for rent such portion of the crop raised as his share would amount to if proper industry had been bestowed in cultivating the land.

2. *Same; abandonment by tenant; permission to advancer to gather crop.* Where tenants, after obtaining advances which have a crop-lien under the statute, abandon the crops, it is proper for the landlord, though not his duty, to allow the advancer, in order to save himself harmless, to enter and finish the cultivation and gather the crops, which, in that event, after proper rent is paid, go to such advancer.

3. *Same; failure of advancer to avail himself of such permission.*—If the advancer fails to avail himself of such permission, he relinquishes to the landlord ownership and right to the crops, and cannot afterwards have them attached as the property of the tenant.

4. *Same; when advancer may perhaps have action against landlord.*. Where the landlord enters and finishes the cultivation of the crops abandoned, after one making advances on them refuses to do so, the latter may, perhaps, maintain case against the landlord, if a surplus remains after satisfying the claim for rent and the cost and expenses of completing what the tenants should have done about the crops; but, even in that event, the advancer could not have the landlord's crops levied on under attachment against the tenants.

APPEAL from the Circuit Court of Macon.
Tried before the Hon. H. D. CLAYTON.

S. B. PAINE, for appellant.

ABERCROMBIE & GRAHAM, *contra.*

MANNING, J.—This was a trial of the right of property,. in which Wheat, the appellant, was claimant of certain ungathered corn and cotton in the field, which had been levied on as the property of one Lowery and one Harris, by virtue of an attachment, sued out by the appellee, Watson, against them. The action was brought by Watson as a creditor, with a crop-lien for advances to Lowery and Harris to enable them to make these crops. The land on which they were grown belonged to appellant, Wheat. Lowery and Harris occupied it as his tenants, under an agreement to cultivate it in corn and cotton; of which, Wheat, the landlord, was to have one-fourth, to be gathered and delivered by them, for rent. This was known to Watson, who had made inquiries on the subject of Wheat, before making his arrangements with Wheat's tenants to secure the advances. After these had been made to an amount between $500 and $600, Lowery and Harris abandoned the premises, one in May and the other on the 13th of July, leaving the crops in a very bad condition, so bad, according to some of the testimony, that it would cost as much as they were worth to clear them of the grass and weeds and put them in good order. Wheat, the landlord, took possession of the vacant premises, and, according to the testimony, was at an expense in completing the making and gathering of these crops, almost equal to the amount realized from them. But, before they were housed or gathered, they were levied on by the attachment of Watson, on the 24th of September, and surrendered to Wheat, on his executing a claim-bond.

[Wheat v. Watson.]

Upon the trial, in the course of the proceedings, the claimant, Wheat, " offered to prove that after the abandonment of the crop by both the tenants, and before he, as landlord, took possession of the rented land and commenced work upon the abandoned crop, he saw Watson, the plaintiff, and informed him of the abandonment of the crop and place by the tenants, and proffered to allow him to take possession, and work the crops, &c.; which he declined to do." The court refused to allow this proof to be made, and the claimant excepted. This ruling of the court is assigned as error.

The earliest contract was that between Wheat, the landlord, and his tenants. His lien for the rent was older than Watson's. The statute expressly concedes to it priority over the statutory crop lien for advances. Furthermore, his tenants were under an obligation, arising out of the nature of their contract with him, not to let the land lie idle, but to cultivate it with a proper degree of industry, to make it productive; from which it resulted, that the landlord was entitled, for his rent, to one-fourth of the crops which, with such industry, the tenants should have made on the land. This is the amount he was entitled to receive for rent.

When the tenants abandoned the premises, it was not the duty of the landlord to let them remain unoccupied and unused. " But he may enter, and from that time the contract is determined."—*Schuessler v. Ames*, 16 Alabama, 76. Thenceforward he occupies the property as owner. It does not follow, however, that rights in favor of other persons may not have grown up in the meantime, which he would be bound to respect. Especially would such rights grow out of a transaction like that of Watson with the tenants, made after consultation with Wheat, their landlord, and in pursuance of a law to encourage and promote agriculture, by giving a lien for advances of things specified in the statute, upon the crops raised by the aid of such advances, and without which they could not have been made. This is one of the numerous cases in which the injunction of the law—*sic utere tuo at-alienum non laedas*—ought to be observed. And, though we do not mean to say that when tenants, who have obtained such advances, and have planted and partially made their crops on rented lands, then abandon and leave them, refusing to perform their part of the contract fully, the landlord is bound to let the creditor, who has made such advances, take the place of the tenants, and assume their obligations, or that the creditor is bound to accede to such a proposal, it is quite proper that the option to do so should be offered

to the latter.  Especially proper would this be, if the crop had been made, or nearly made, and only remained to be gathered, and was sufficient to overpay the landlord.  The making of such a proposal is evidence tending to show good faith, on the landlord's part, and a readiness to afford to him, whose advances have aided the tenants to plant and partially make their crops, an opportunity to save himself from loss by completing the cultivation and gathering of the crops that they have faithlessly abandoned.  If he refuses to do so, he relinquishes to the landlord the ownership of the crops growing on the land of which he was already the owner, and can have no right to have them attached afterwards as the property of the tenants.  We think the Circuit Court erred in excluding from the jury the evidence referred to.

We do not decide that even then the creditor of the tenants may not be entitled to any part of the value of the crops after they are made and gathered.  If, after defraying the expenses of completing the work which the tenants should have done, and paying to himself, besides, the rent he was entitled to demand—one-fourth, in this instance, of the crops which would have been produced by ordinary tillage and industry on the part of the tenants—there remained a surplus, it may be that a claim upon this should arise in favor of the creditor, by whose aid the crops were made ; and perhaps he might, thereupon, maintain an action on the case. But it would be out of such surplus only, and after the landlord was fully paid, that the creditor would be entitled to recover anything.  And his contract for a crop-lien with the tenants would not secure to him the right to have these crops of the landlord levied on by an attachment against the tenants.

The right of the landlord to make the claim in such an action, does not arise out of his lien for rent, but his ownership of the property.

Let the judgment be reversed and the cause remanded.