# McRae *et al. v.* Newman.

*Bill in Equity to recover balance due on Mortgage.*

1. *Conveyance to be delivered when money paid, and mortgage to secure unpaid money; when operative; revestment in vendor; what operates as notice to intermediate purchaser.*—Where the owner executes a conveyance of lands, and deposits the same with an agent to be delivered to the purchaser when he complies with the contract, and executes a mortgage back to secure the unpaid purchase money, such instruments become operative only from the date of delivery; the title remains in the vendor until such delivery and *eo instanti* returns to him by the mortgage so as to preclude the interposition of any title or right in any other person; and the vendee's mortgage, if duly recorded within ninety days (Rev. Code, § 1657), operates as a notice of its contents to one purchasing in the interval between its delivery and record.

2. *Same; what does not estop vendor from enforcing mortgage given by original vendee.*—In such a case, the mere fact that an attorney, while he held the deed to the original purchaser, as an *escrow*, wrote out a conveyance, at the instance of such purchaser, to a third person, who paid the purchase money, without actual notice that his immediate vendor had not paid, does not estop the vendor from enforcing the mortgage of the original vendee, if recorded in due time—such second purchaser never making inquiry of the attorney, and the attorney not being informed as to the terms of payment agreed on between the original and second purchaser.

APPEAL from the Chancery Court of Barbour.
Heard before the Hon. B. B. McCRAW.

S. W. GOODE, with whom was F. M. WOOD, for appellants.—
I. As Kolb had no legal estate at the time he made the mortgage to Newman, no legal estate passed by that conveyance to Newman; the mortgage conveyed only the equitable estate which Kolb then had for the security of the debt to Newman.—*Chapman v. Glassel,* 13 Ala. 54; *Edmonson v. Montague,* 14 Ala. 376.

II. Kolb's subsequent acquisition of the legal title did not enure to Newman, so as to unite the legal to the equitable estate conveyed to him by the mortgage; for the mortgage could act upon the subsequently acquired legal estate of Kolb, and have the effect of vesting the legal estate in Newman only by way of *estoppel or rebutter;* but McRae is not estopped by the covenants of warranty in the mortgage, because:

1. McRae is a stranger to that conveyance, and many acts which estop a party shall not estop a stranger.—*Rawlen's Case,* 4 Co. 53; 14 Ala. 378 and cases cited; 1 Lev. 43, Co. Lit. 550.

(34)

2. There can be no estoppel where an interest passes; and here an interest did pass, viz.: the equitable interest which Kolb had at the time he made the mortgage.—Smith's Lead. Cases, pp. 584 and 610.

3. The cases which support the doctrine that the grantee and his assignees are estopped from denying the grantor's title, are not analogous to this case, as in none of them was the *subsequent* title derived from the *grantee* in the prior conveyance, and this makes a material difference, because Mc-Rae had a right to suppose that if Newman had any lien on the land on or prior to the 1st of January, 1867, he had assigned or conveyed it to Kolb by his deed delivered to Kolb on the 7th of January, 1867.

4. The after-acquired title of Kolb was not actually transferred and passed to Newman by the covenants in Kolb's mortgagee; but Kolb held the title in trust for Newman, and a trust would have resulted to Newman, had not Kolb conveyed the legal title to McRae, an innocent purchaser for value and without notice.—Rev. Code, § 1591; 2 Smith's Lead. Cases, p. 637.

5. The following authorities are against the doctrine that the grantee and his assignees are estopped from denying the grantor's title, except they are assignees with notice.— Rawle's Covenants for Title, pp. 430-8 and notes; 15 Ga. 521; *Briants v. Vinzant,* 18 Ga. 181; *Fairclota v. Jordan,* 18 Ga. 358; 2 Smith's Lead. Cases, 636 and 638.

III. Newman, as mortgagee from Kolb of the land, was not an innocent purchaser for value, because his agent, Shorter, wrote the deed from Kolb to McRae, and McRae had been in actual possession of the land for weeks before and at the time the mortgage was made. This, then, being a suit in equity and the whole difficulty having been caused by Newman's negligence through his attorney, this court will hold and decree that the "equity of the party who has been misled, is superior to his who has misled him," [Adam's Equity, p. 28], and that if McRae is entirely innocent, he cannot be made to suffer at the hands of Newman for Newman's own wrong.—2 Kent's Com. p. 825 and notes; 26 N. Y. 505; 27 Ala. 346; 16 N. Y. 125.

IV. The deed of the 16th November, 1866, from Newman to Kolb, took effect from its delivery to Kolb, and it cannot have relation back to its date so as to work a wrong to innocent purchasers like McRae.—1 John Ch. 297; *Frost v. Beckman,* 1 Th. Co. Lit. 475.

V. The lien of the vendor, against the vendee and voluntary purchasers under him with notice, or having an equitable title only, is admitted in this State.—*Burns v. Taylor,* 23 Ala.

254. But it does not exist against purchasers under a conveyance of the legal estate made *bona fide* for a valuable consideration, without notice, if they have paid the purchase-money.—2 Sto. Eq. 1228; 15 Ves. 336; *Burch v. Carter*, 44 Ala.

VI. If McRae can be held to have had notice, actual or constructive, of the mortgage of 1st of January, 1867, under which Newman claims, or of any unpaid purchase money before he received his conveyance from, and paid the purchase money to Kolb, we admit that Newman must prevail in this suit. First, then, it is admitted, and if it were not admitted, the facts show that McRae had no actual notice of that mortgage. Then the only remaining question to be decided is, whether the recording of that mortgage was *constructive* notice to McRae. I think it was not, and that this can be demonstrated upon authority.

1. The mortgage bears date the 1st of January, 1867, and was delivered to Newman on that day, *i. e.*, to his agent, Eli Shorter.

2. The mortgage was not recorded till the 7th of March, 1867, and of course, was not on record at the time McRae received the two deeds, *i. e.* on 7th January, 1867.

3. The *legal* title was not vested in Kolb until the 7th day of January, 1867.

4. On that very day (7th January, 1867) Kolb delivered *both* deeds to McRae, and McRae already had possession of the land.

5. Kolb then mortgaged the land *six* days before he had the *legal* title to it.

VII. These being the facts, then we say that McRae was chargeable with notice only of incumbrances put upon the land by Kolb *after* the 7th of January, *i. e.*, after he, Kolb, had the legal title. In the *N. Y. Life Ins. Co. v. White*, (17 N. Y. 473), Judge Davis said, in delivering the opinion of the court: "It appears, from a statement in plaintiff's mortgage, that Staats purchased the premises in 1841. In preparing directions for a search the plaintiffs would naturally direct that an examination should be made for conveyances and mortgages executed by him from *that* date down to the time that plaintiffs advanced their money and took their mortgage. Such an examination, made with the strictest care and accuracy, would not have disclosed the existence of this loan-office mortgage." There seems to be two cases in which a writing, though recorded, avails nothing.

1. In case of a person who does not claim under the grantor.—*Gimon v. Davis*, 36 Ala. 589.

2. In case of persons who claim under a deed to the

grantor *after* registry of the writing in question. ☞Party is not required to search the registry farther back than the conveyance to his grantor *quoad* to persons claiming under such grantor. See Analy com. et. Stat. L. per John B. Minor, Prof. Univ. Va. Title "Registry of Deeds," 20. If this be the rule, then McRae was bound to look for conveyances only from the time the *legal* title vested in Kolb, that is, from the 7th of January, 1867.

Pugh & Baker, *contra.*—The case of *Nesbit et al. v. Warde, Ex. et al.*, has no application to the facts in this case. In the present case Kolb was in possession of the Fitzhugh plantation, under Newman, and had no written evidence of a title save the written agreement between Kolb and Newman. When McRae purchased from Kolb, the law required McRae at his peril to examine into and to inform himself of the character of the title by which he had possession of, and claimed the right to sell the land to McRae. Being charged by law with notice of the written agreement between Kolb and Newman, McRae necessarily had notice—was bound to know—that Kolb either had mortgaged to Newman, or, if he had not, his agreement bound him to do so, and it was McRae's business and duty, having notice of Kolb's contract with Newman, to see that Kolb had performed his contract with Newman. McRae, finding Kolb with Newman's deed in his possession, made no difference, because the Kolb and Newman contract informed McRae that Kolb might have Newman's deed after the payment of the $4,000, but that $6,000 more of purchase-money was due years after McRae's purchase, which had been, or was to be, secured by mortgage. How could McRae believe that Newman's deed to Kolb gave Kolb an unincumbered title when the law charged McRae with knowing that $6,000 of the purchase-money due Newman was due years after McRae's purchase? When Kolb was found by McRae to be in possession without a deed, the law compelled McRae to find out why Kolb had no deed, and compelled him to find out the *truth*, and the truth was that he had no deed, because he had not complied with his contract with Newman, and that if he had not, he was bound to do so. In every aspect McRae fails to put himself in the position of an innocent purchaser without notice. Besides, Newman's debt against Kolb was not *pre-existing* to the mortgage, but was *co-existing* with the right to the mortgage, as evidenced by the Kolb and Newman contract.

MANNING, J.—Appellee, Newman, a citizen of Virginia, was in 1866, owner of a plantation in Barbour county, Ala-

bama, called the "Fitzhugh Place"; and in September of
that year, an agreement was made between him and Reuben
F. Kolb, (who then occupied the premises under a lease from
Newman,) for a sale of the property to Kolb for $10,000; of
which Kolb was to pay $4,000, in cash, and for the balance,
give his two notes of $3,000 each, secured by a mortgage of
the premises, and payable with interest from 1st of January,
1867, at one and two years after date.   Upon making the
first payment, and the notes and mortgage, he was to receive
a conveyance of the title from Newman.   And, with a view
to the execution of this contract, Newman, in November,
1866, had his deed of the plantation to Kolb, signed, sealed
and acknowledged, in Virginia, and sent out to *Messrs.
Shorter & Brother*, attorneys at Eufaula, to be delivered when
Kolb should perform his part of the agreement.   But before
this was done, the appellant, McRae, bargained with Kolb
to buy the same property from him at $11,000; of which he
was to pay $8,000 in cash, and for the rest, give his note at
one year, and receive a conveyance from Kolb and wife.

McRae paid $5000 on the first of January, 1867, and $2,000
more on the 4th.   He also delivered his note to Kolb for
$3,340, the balance of the price and one year's interest; but
when this was delivered, or what was its date, is not shown
by any witness.   And McRae received from Kolb posses-
sion of the premises, the deed of Newman to him, signed and
acknowledged in November, 1866, and Kolb and wife's deed
to him, McRae, dated December 28th, 1866, and acknowl-
edged January 4th, 1867; but when these instruments were
respectively delivered is a matter in dispute.   The other
$1,000 of the cash payment of McRae to Kolb, was made "in
corn and fodder and, perhaps, some money"; but when or
by whom delivered, does not appear.

Two years after these transactions, and long after McRae
had paid his $11,000, in full, to Kolb, he learned from New-
man that the latter had a mortgage on this same Fitzhugh
Place, executed by Kolb as a security for his two notes of
$3,000 each, for the credit part of the price he was to pay
Newman for it; and that a large part of this debt was still
due.   And it is to enforce payment of this balance, by a
sale under the mortgage, that Newman filed the bill in this
cause.

It is insisted for McRae that the deed of Kolb to him is
older than Kolb's mortgage to Newman and takes precedence
of it; and if not, that Newman is estopped from setting up
his mortgage against defendant, McRae, because the latter
bought the land without any suspicion of such an incum-
brance, with the knowledge of *Eli S. Shorter*, the agent of

Newman, and without any intimation from him of its existence, although if it existed, the mortgage was then in his possession.

First, in regard to the priorities, as mentioned above, Newman's deed to Kolb bears date and was acknowledged in November, 1866; and the deed from Kolb and wife to McRae bears date December 28th, 1866, and was acknowledged January 4th, 1867. The mortgage from Kolb to Newman bears date January 1st, 1867, and was attested by subscribing witnesses, but was never acknowledged at all before a magistrate. It was recorded March 7th, 1867. Such instruments, though, do not become operative always from their dates, nor at all, until delivered—that is, until the grantors part with their control over them with the intent that they shall go into effect.

When was Newman's deed to Kolb delivered? It is proved by entries on the books of Shorter & Brother and their testimony, and by the date of the draft, in which a large part of the first payment was made, that this deed was not delivered before the 7th of January, 1867. And Eli S. Shorter and Kolb testify that Newman's deed to him was delivered on that day. Confirmation of this is afforded by an entry of that date, upon the books of Shorter & Brother of a charge against Newman, for revenue stamps to be affixed to that deed. The evidence in opposition is very unsatisfactory. McRae, on this subject, does not testify of his own knowledge; for, he says Newman's deed was delivered to *his* *agent*, Kendall, before Kendall made the first payment for him, to Kolb; and that both it and Kolb's deed to him (McRae) were delivered to Kendall at that time. But McRae was not then in Eufaula where the transaction took place, and could not have personal knowledge of them. What testimony, then, have we on this subject? Kendall, in his second deposition, testifies that *according to his best recollection,* (which may be very confused and uncertain, after a lapse of six years,) he had Newman's deed to Kolb, and Kolb's deed to McRae, before he paid any money to McRae. And he and Locke satisfactorily prove, by reference to book-entries, that his first payment of $5,000 was made to Kolb for McRae, January 1st, 1867, upon the order of McRae, and the second, of $2,000, on the 4th. But Kendall says nothing of having given back to Kolb his deed to McRae for acknowledgment, as McRae says he did. It is also pretty certain that he was mistaken in supposing he then had, as agent for McRae, Newman's deed to Kolb. For it is quite clear that this was not delivered to Kolb before the 7th of January. And since it was upon McRae's order that Kendall paid for

him the $5,000 to Kolb, it was not necessary that Kendall should have the deed before making the payment. In his first deposition, he does not say he did have it. There appears indeed to have been great inattention on McRae's part in regard to the titles to the land, for he employed no attorney to guard his interests and advise him, and never even made any inquiries on the subject, of Shorter, through whom, as he knew, the conveyance from Newman was to come. We notice, also, that he did not have Kolb's deed to himself recorded until the 13th of June, 1867; and that of Newman to Kolb was not recorded until February 18th, 1869.

When, now, was the mortgage from Kolb to Newman, for a part of the purchase-money, delivered? It is dated January 1st, 1867, and attested by the two Shorters, and was left in their hands. But the written agreement between Kolb and Newman about the purchase, shows that the mortgage to Newman and the deed of Newman to Kolb, the mortgagor, were to be simultaneously delivered. Until this was done and the cash payment made, the papers remained *in escrow*, in Shorter & Brother's hands. The mortgage became operative only when the conveyance of the land, for the price of which it provided, was delivered. Until that time the mortgagor neither owned the land he mortgaged, nor owed the debt secured thereby; wherefore, it did not matter whether he had previously executed a deed of the land to McRae or not. This could not have precedence of the mortgage; because, the mortgagor never was able to convey the land, free from that incumbrance. The title remained in Newman until his deed was delivered, and by the mortgage, *eo instanti*, returned to him, so as to preclude the interposition of any title or right in any other person. It has often been held that such a transaction is one and entire, and that even a right of dower in the wife of the purchaser could not, in such a case, come in between the conveyance and the mortgage; for which reason her signature to the mortgage, or relinquishment of dower in the land mortgaged, is in such a case, wholly unnecessary.—*Boynton v. Sawyer*, 35 Ala. 500, and cases there cited.

No priority, therefore, arises in favor of McRae, because the deed to him bears an earlier date than that of the mortgage to Newman.

In regard to the supposed estoppel of Newman, whereby he should be precluded from insisting on his security in opposition to McRae, a *bona fide* purchaser from Kolb, the argument in support of it rests wholly on the circumstance, that the deed from Kolb to McRae is in the handwriting of Shorter, one of the attorneys of Newman. McRae says that

[Ex parte Brown.]

knowing his handwriting, and that he was the agent of Newman to deliver the deed of the latter to Kolb, his confidence in Shorter, (who was the uncle of Kolb), led him to believe that Kolb had a good, unincumbered title. This is a very narrow basis on which to found so important a conclusion, as that Newman should, therefore, be barred of any right under the mortgage to him. Apart from Shorter's explanation of the circumstances under which he wrote the deed, and of the fact that it is not affirmatively shown that he was informed when or in what way McRae was to pay for the land, McRae does not himself say that he ever approached Shorter, or sent to make any inquiry of him, on the subject, or employed any one else to investigate the condition of the title—although he knew when and where he could obtain such information. We cannot charge the consequences of this carelessness on Newman, and deprive him of his vigilantly preserved rights, on the ground that his attorney did not seek out McRae to give him information which he did not himself take pains to apply for.

Let the decree of the Chancellor be affirmed.