[Shahan v. Herzberg, Simpson & Co.]

# Shahan *v.* Herzberg, Simpson & Co.

## *Trial of Right of Property.*

73   59
96  161
73   59
105  353
73   59
106  614
110  241
110  321

1. *Trial of right of property; issue and burden of proof.*—In the trial of the right of property levied on under an execution or attachment, the issue is, whether the property belongs to the defendant and is subject to the process, and the burden of proof is on the plaintiff in the process, who is regarded as the actor. If he makes out a *prima facie* case, the burden of proof then shifts to the claimant, who, in that event, must show a legal title in himself—such a title as would support trespass, trover or detinue.

2. *Same; what not admissible in evidence:*—It having been shown in the trial of the right of property in cotton levied on under an attachment, that the cotton was a part of a crop planted and partly cultivated by the defendant on rented land, but abandoned by him before its maturity, and afterwards gathered by his landlord, who had re-entered, the fact that the landlord, after the crop was abandoned, stated to the plaintiff, who was about to sue out an attachment against the defendant and have it levied on the crop, that he would work out the crop and pay plaintiff's demand against the defendant, on the faith of which the attachment was not then sued out, having no tendency to show that the title to the cotton was in the defendant, or that the cotton was liable to the attachment, is inadmissible for the plaintiff.

3. *Surrender of leased premises, on which there is a growing crop, during term; effect of on title to crop.*—If a tenant, before the expiration of the term, abandons or surrenders to the landlord the leased premises, on which there is a growing crop, and the landlord re-enters, no right or interest in the crop remains in the tenant, but it passes to the landlord as an incident to his restoration to the possession, and to the termination of the tenancy.

4. *Same; what operates as.*—Where a tenant, after commencing the cultivation of a crop on the leased premises, left the country, but before leaving, he told the landlord to take charge of the crop, finish its cultivation, gather it, and pay himself out of it for rent and advances and apply the balance, if any, to the payment of his other debts, and the landlord re-entered, this, in contemplation of law, was a surrender to the landlord, terminating the lease, and passing to him the title to the crops.

5. *Bailment; what constitutes; right of bailee to maintain claim suit.*—When the owner of goods transfers to another the possession of them for a particular purpose or use, a bailment is created, the general property residing in the bailor, and the immediate possession and a temporary or qualified right in the bailee; and the goods having been levied on while in the bailee's possession, as the property of the defendant in an attachment, who is not connected with the legal title, the bailee may interpose and maintain a claim under the statute for their recovery.

APPEAL from Etowah Circuit Court.

Tried before Hon. LeRoy F. Box.

On 4th November, 1878, Herzberg, Simpson & Co. sued out an attachment before a justice of the peace against William

[Shahan v. Herzberg, Simpson & Co.]

M. Hope, which was levied on a bale of cotton as the property of the defendant. This cotton was claimed by W. P. Shahan, and, on his making the statutory affidavit and bond, was delivered to him by the sheriff. From the judgment rendered by the justice, the claimant appealed to the circuit court, where the cause was tried *de novo* on an issue made up under the statute, the trial resulting in a verdict and judgment against the claimant, from which this appeal was taken.

As the plaintiffs' evidence tended to show, the claimant rented to Caleb Hope certain land for the year 1878, a portion of which the latter, in January, 1878, subrented to William Hope, and also furnished him certain advances to enable him to make a crop. William Hope took possession of the land subrented to him, and commenced the cultivation of a crop thereon, which he continued until 4th July, 1878, when he "left the country. Before leaving he told Caleb to take charge of the crop planted and growing on said land so subrented to him, and to finish its cultivation, and gather it, and pay himself out of it, and, if there was anything left, to pay it on his debts." Caleb Hope thereupon "took charge of said crop, and finished its cultivation, and gathered the same," a part of which was the bale of cotton in controversy. Caleb Hope was examined as a witness on behalf of plaintiffs, and he testified, on cross-examination, that after said cotton had been gathered, he turned it over and delivered it to the claimant under an agreement, that the claimant was to ship the cotton to Rome, Ga., for him, and give him credit for the proceeds of the sale thereof on the rent which he owed the claimant, then unpaid. On rebutting examination this witness further testified that he did not sell said bale of cotton to the claimant, and that it was to be shipped as his cotton; and that shortly afterwards, he delivered to the claimant two other bales of cotton, the value of which was sufficient to pay the rent he owed the claimant. When the cotton was seized by the sheriff, it was in the claimant's possession.

H. Herzberg, one of the plaintiffs, was examined as a witness in their behalf, and they offered to prove by him, that after the 4th July, 1878, Caleb Hope came into plaintiffs' store, and asked witness not to put him to any unnecessary expense; that William Hope's crop looked well, and he would work it out and pay plaintiffs what William owed them; that witness gave to Caleb Hope the amount of plaintiffs' account against William Hope, and that he was about to sue out an attachment against William, and have it levied on his crop, but held up under the promise made by Caleb Hope until the attachment in this case was sued out. To this testimony the claimant objected, on the ground that it was irrelevant and illegal, but

the court overruled his objection, and allowed the testimony to go to the jury, and to this ruling the claimant excepted. The plaintiffs were also allowed to show by the testimony of one Cowan, against the claimant's objection, that shortly after the 4th July, 1878, witness was in plaintiffs' employment, and went to see Caleb Hope in reference to their claim against William Hope, and that Caleb Hope then told witness that the plaintiffs need not be uneasy about their debt against William, that they should have William's crop, and that William was only gone on a visit. To this ruling the claimant also excepted. It was shown that the claimant was not present at either of said conversations. The plaintiffs also read in evidence the attachment, and return thereon, and proved the value of the cotton levied on.

The evidence introduced on behalf of the claimant tended to show, that Caleb Hope delivered to him the bale of cotton to be shipped to Rome, Ga., the proceeds to be applied to the rent which said Hope then owed him; that said Hope had since delivered to him two other bales of cotton, and that "he did not know whether Caleb owed him anything now, or how the account stood between them."

The foregoing being the substance of the evidence introduced on the trial, the court charged the jury, at the written request of the plaintiffs, inter alia, as follows: 2. "If the jury believe from the evidence, that, when William Hope left in July, he told Caleb Hope to take his crop, and pay his debts, then the title remained in William Hope." 3. "If the jury believe from the evidence, that the cotton in controversy was delivered to Shahan by Caleb Hope, to be shipped for him, and the proceeds accounted for, or applied to the rent, then the title did not pass to Shahan." 5. "If the evidence shows that the attachment was levied on the cotton claimed, and that the cotton so levied on was a part of the crop of the defendant in attachment, then the burden of proof is shifted to the claimant; and unless he satisfies the jury by the evidence, that the title was not in William Hope at the time of the levy, you must find for the plaintiffs." The court refused the following charges, among others, requested by the claimant: 1. "That if the jury believe from the evidence, that Caleb Hope turned over the bale of cotton to Shahan before the levy, to be shipped and sold, and the proceeds to be applied to rent due from Caleb to Shahan, and that the cotton was delivered to Shahan before the levy, then this was a sufficient delivery to authorize the claimant to recover." 2. "That if the jury believe from the evidence, that W. P. Shahan rented the land to Caleb Hope, and Caleb Hope subrented a part of said land to William Hope, and that William Hope quit the crop in July, and

[Shahan v. Herzberg, Simpson & Co.]

turned the crop over to Caleb Hope, to be worked and gathered by him, and applied to what he owed Caleb for rent and advances; and that William Hope owed any such debt or claim, and that Caleb did work the crop and gather it, and that the bale in controversy was raised on the land subrented, and that Caleb turned over the bale of cotton to Shahan before the levy, to be shipped and sold, and the proceeds applied to the rent due from Caleb to Shahan, if the jury believe any was due, then the jury must find for the claimant."

To the charges given and to the charges refused, the claimant duly excepted; and these rulings, and those on the admissibility of evidence above noted, are here assigned as error.

AIKEN & MARTIN, for appellant, cited *Robinson v. Hirschfelder*, 59 Ala. 503; *Carter v. Wilson*, 61 Ala. 434; *Abraham v. Carter*, 53 Ala. 8; 21 Ala. 574; 1 Porter, 175; 12 Ala. 673; *Shields v. Atkinson*, 67 Ala. 244; *Boswell & Woolley v. Carlisle, Jones & Co.*, 55 Ala. 554; *Wheat v. Watson*, 57 Ala. 581; *Bonham v. State*, 65 Ala. 459; *Drake v. Goree*, 22 Ala. 409; 62 Ala. 194.

DENSON & DISQUE, *contra*, cited *Wells v. Thompson*, 50 Ala. 83; *Block v. Maas*, 65 Ala. 211; *Allen, Bethune & Co. v. Maury & Co.*, 66 Ala. 17; Code of 1876, § 3476; *Hudson v. Weir*, 29 Ala. 294.

BRICKELL, C. J.—In a trial of the right of property levied on by execution, or by attachment, the issue is, whether it belongs to the defendant and is subject to the process. The affirmative of the issue, and the burden of proof, the statute devolves on the plaintiff in the process (Code of 1876, §§ 3342–5), who is regarded as the actor in the suit.—*McAdams v. Henderson*, 34 Ala. 478. But if he introduces evidence having a tendency to show, and which *prima facie* shows, that the title resides in the defendant, the *onus* of proof shifts to the claimant, and, in that event, he must support his claim upon the strength of his own title—he must show in himself a legal title which would support the action of trespass, or of trover, or of detinue, if he were a plaintiff in either action, seeking to recover damages for the taking or conversion of the property, or to recover the property itself.—*Foster v. Smith*, 16 Ala. 192; *Lehman v. Warren*, 53 Ala. 535. The fact of title is ordinarily shown by evidence, that, at the time of the levy, the property was in the possession of the defendant—possession unexplained being *prima facie* evidence of the ownership of personal property. If the possession at the time of the levy is in a stranger, or in the claimant, the title of the defendant may be proved, as he

[Shahan v. Herzberg, Simpson & Co.]

would be compelled to prove it, if he were the actor, subject to the burden of proof.

The general rule in reference to the relevancy and admissibility of evidence is, that facts and circumstances which, when proved, are incapable of affording any reasonable presumption or inference as to a material fact involved in the issue, ought not to be received. In other words, evidence ought to correspond to the issues; and facts and circumstances which do not tend, directly or indirectly, to prove or disprove them, can not be admitted.—*State v. Wisdom*, 8 Port. 511; *Governor v. Campbell*, 17 Ala. 566. Subjected to this test, the evidence of Herzberg, and of Cowan, to which objection was taken, was not admissible. It had no tendency to show that the title to the cotton was in the defendant, or that the cotton was liable to the attachment. If it had upon these inquiries any bearing whatever, its tendency was to show that the defendant in attachment had parted with all interest in the cotton, upon the promise of Caleb Hope, that he would pay the debt owing to the plaintiffs. If such a promise was made, under circumstances that it would enure to the benefit of the plaintiffs, the remedy for its enforcement was a direct suit against the promisor, and not by a suit against the defendant and a levy upon property, with which he had parted upon the faith of the promise. There was error in the admission of the evidence— it was foreign to the issue, and calculated to divert and distract the attention of the jury from the real point of inquiry and the facts bearing upon it.

If a tenant, before the expiration of the term, abandons the premises he has leased or rented, the landlord is not bound to let them remain vacant, but may re-enter and occupy himself, or may lease to another.—*Schuilser v. Ames*, 16 Ala. 73; *Wheat v. Watson*, 57 Ala. 581. And during the term, the tenant may surrender to the landlord, thereby terminating the lease and all its incidents. Any acts which are equivalent to an agreement on the part of the tenant to abandon, and on the part of the landlord to receive possession of the leased premises, is, in legal contemplation, a surrender.—*Talbot v. Whipple*, 14 Allen, 177. The facts of this case, independent of the express agreement between the landlord, Caleb Hope, and the tenant, William Hope, the defendant in attachment, are clear and unequivocal, leaving no room for doubt, that the lease or contract of renting was abandoned, and that such was their intention. The tenant leaves the premises, while the crops are being cultivated, and when further labor and expense must be employed, not only in cultivating, but in gathering them; with no purpose to return and to bestow such labor and expense, but with the purpose that the landlord should receive possession, cultivate and gather

[Shahan v. Herzberg, Simpson & Co.]

the crops, and, if possible, reimburse himself for the advances he had made, and for the rent. The landlord re-entered, cultivated and gathered the crops, and thereby treated the tenancy as having terminated. But independent of these facts, which show a surrender of the lease, the express agreement of the parties operated a surrender, terminated the right of the tenant further to occupy, and conferred upon the landlord the right to receive possession. It was not to the mere use and occupancy of the lands the landlord succeeded upon entering. The growing crops passed to him as incident to his restoration to the possession and to the termination of the tenancy. There was no right or interest in them remaining to the tenant.— *Wheat v. Watson, supra.* It results that the circuit court erred in giving to the jury the second instruction requested by the plaintiffs, and in the refusal of the second instruction requested by the claimant.

We have already said that a claimant in this proceeding must recover upon the strength of his own title, and the title upon which he relies must be such as would enable him to maintain trespass, trover, or detinue, to which this proceeding is in many respects analogous. Laying out of view any rights which may have accrued to the claimant as landlord, possession of the cotton for specific purposes had been entrusted to him by its owner. When the owner of goods transfers to another the possession of them for a particular purpose or use, a bailment in its most usual and ordinary form is created. The general property resides in the bailor, the immediate possession, and a temporary or qualified right reside in the bailee. For an injury to the property while in his possession, or for any invasion of the possession, the bailee may sue the wrongdoer in his own name—he may maintain trespass, case, trover or detinue, as the one or the other may be the appropriate form of action for the particular injury. *Hare v. Fuller,* 7 Ala. 717 ; *Cox v. Easely,* 11 Ala. 362 ; *Mc-Gill v. Monette,* 37 Ala. 49 ; *Lehman v. Warren,* 53 Ala. 535. The right to sue is derived not only from the fact of possession, which is *prima facie* evidence of title, and must prevail against a wrongdoer who can not connect himself with a higher and better title, but it must be conceded because of his liability to account to his principal for the goods. Such liability, it is plain, rested upon the claimant, and he had the clear legal right to interpose in his own name a claim to the cotton. The claim must prevail over the levy of the attachment, unless it is shown that, at the time of the levy, the defendant had the title to the cotton.

We do not notice the instructions given or refused in reference to a sale to the claimant. The facts do not show a sale, and these instructions are abstract, and, to say the least, have a

[The State v. Board of Rev. and Com'rs of Mobile Co.]

tendency to confuse and mislead the jury.   A bailment is how-
ever shown—a bailment that the cotton should be shipped, and
the proceeds of sale accounted for to the bailor.   The bailee
had, of necessity, a qualified title, connected with the possession,
for the purpose of carrying the bailment into effect; and this
entitles him to maintain the claim he has interposed, unless a
superior outstanding title is shown in the defendant in attach-
ment.   There are several rulings of the circuit court not con-
sistent with this view.

Reversed and remanded.