# Allison *v*. Pattison.

96  159
121 255

## Trial of Right of Property.

1. *Trial of right of property; claim of joint mortgagor, who has paid debt secured, to enforce the mortgage for his indemnity, can not be tried in.* The plaintiff and the defendant, to secure a joint indebtedness, executed a mortgage on personal property which they owned together. Afterwards, by a contract between them, the defendant became the owner of the mortgaged property, and agreed to relieve the plaintiff of all liability on the joint indebtedness. The creditor not having consented to this arrangement, the plaintiff settled with him and took from him an assignment of the mortgage. The plaintiff, as the transferee of the mortgage, having sued out an attachment against

the defendant and had the writ levied on the property covered by the mortgage, a claim to it was interposed by a third person; *Held*, that whatever claim upon the property the plaintiff acquired by the transfer of the mortgage to him could not be made available in a proceeding under the statute (Code, §§ 3004 *et seq.*) for the trial of the right of property.

APPEAL from the Circuit Court of Wilcox.
Tried before the Hon. JOHN MOORE.

JOHN Y. KILPATRICK, for the appellant, cited *Hughes v. Hatchett*, 55 Ala. 631; *Keel v. Larkin*, 72 Ala. 493; *Cullum v. Emanuel*, 1 Ala. 23; *Giddens v. Williamson*, 65 Ala. 439; *Vandiver v. Ware, Ib.* 606; Code, §§ 3004, 3012, 3149, 3150 and 3151.

MILLER & MILLER, *contra*, cited *Harrack v. Jacobs*, 1 L. R. An. 152; *Lamb v. Withrow*, 31 Iowa, 164; *Bones v. Aiken*, 35 *Ib.* 534; *Johnson v. Belden*, 49 *Ib.* 301.

STONE, C. J.—This suit is what is known in our jurisprudence as a trial of the right of property. Allison was plaintiff in attachment, Grogan defendant, and Pattison claimant. The subject of contention was five bales of cotton, which had been grown by Grogan, and were shipped to a commission merchant in Mobile. Allison sued out attachment, and had it levied on the cotton. The ground of attachment, as set forth in the affidavit, is that Grogan is indebted to plaintiff, as transferee of W. Henderson, in the sum of one hundred dollars, . . . and that the said James Grogan has fraudulently disposed of his property." Neither the affidavit nor attachment gives intimation of asserted lien.

Pattison made affidavit claiming the cotton, gave bond, and in this way this collateral suit was commenced. The issue in such suit is whether the property is subject to the process, and the burden of proof is on the plaintiff in attachment. Code of 1886, § 3007 and note.

All the questions presented by this record arise on the rejection of evidence, which was offered by plaintiff. His testimony being ruled out, there were verdict and judgment for claimant. The testimony ruled out tended to show the following state of facts:

In January, 1890, Allison and Grogan jointly purchased a tract of land from Pattison on long time, and took from him an obligation to make title when the purchase-money should be paid. They were joint purchasers, executed joint

[Allison v. Pattison.]

promises to pay, and contemplated cultivating the land in joint adventure. In April, 1890, they purchased mules from Henderson on joint account, valued at $265, and to secure payment in October, 1890, gave him a mortgage lien on the mules, and on five bales of cotton to be grown that year.

In June, 1890, Allison and Grogan came to an agreement, by which, on certain conditions, Allison was let out of the contract by which they purchased the land, and Grogan assumed the entire burden and benefit of the purchase. Pattison agreed to this substituted arrangement; all of which was reduced to writing, and signed by all the parties. Grogan also agreed with Allison to take upon himself the burden of the mule purchase from Henderson, and to relieve Allison of all liability therefor. This promise of Grogan was embraced in the writing, but Henderson's assent thereto was not obtained. So, Allison remained liable to Henderson for the mules.

In September, 1890, before the mule debt became due and demandable, Allison settled with Henderson, and took from him an assignment of the obligation, crop lien and mortgage which he and Grogan had executed to secure the purchase-money of the mules. The assignment is in the following form: "Received from Jas. L. Allison his draft for the within two hundred and sixty-five dollars. When said draft is accepted and paid I hereby transfer the within claim to Jas. L. Allison, without recourse on me. (Signed) W. Henderson *per* J. R. Liddell."

There can be no question that the testimony offered and rejected in this case tended to prove that, as between Allison and Grogan, the agreement of June, 1890, had the effect of placing on Grogan the primary burden of paying the debt to Henderson, created in the purchase of the mules; and Allison having settled with Henderson and thus become the owner of the claim, the testimony would have been competent in any issue between Allison and Grogan, in which the question of the latter's indebtedness to the former was the inquiry. Cases of conflicting liens sometimes arise, which, in trials such as this, render such inquiry material. In the absence, however of special circumstances, the issue in trials of the right of property, is, did the defendant in execution or attachment, at the time the lien accrued or the levy was made, own such property in the goods as is the subject of levy and sale under the process.—*Dryer v. Abercrombie,* 57 Ala. 497; *Boswell v. Carlisle,* 55 Ala. 554; *Shahan v. Herzberg,* 73 Ala. 59; 2 Brick. Dig. 479, §§ 63 *et seq.* There was

[Gindrat v. Western Railway of Alabama.]

nothing shown in this case, which made such inquiry material, in a trial such as this.

The contention of appellant is, that by paying Henderson the debt secured by the mortgage and crop lien, and having it assigned to him, he became clothed with all Henderson's rights, and can have them enforced for his own indemnity. We hold this contention untenable in a trial of the right of property. The obligation, crop lien and mortgage were the joint contract of Allison and Grogan. Each was a principal, and each equally bound. The lien the contract secured was on property present and prospective, which was, at the time the lien was created, as much the property of Allison as it was of Grogan. Each was a principal debtor, and each was alike and equally bound to pay Henderson. True, by the terms of his, Allison's, agreement with Grogan, the latter became bound to repay him what he had paid out, but that obligation did not spring out of the original purchase of the mules from Henderson, or out of the obligation they had jointly executed to secure the payment to him, Henderson. It grew out of the subsequent contract by which Allison sold out to Grogan. The mortgage and crop lien were no security for that; at least in any proceeding which a court of law can take cognizance of.—*Harrack v. Jacobs,* 1 Lawyer's Rep. Annotated, 152; *Lamb v. Withrow,* 31 Iowa, 164; *Bones v. Aiken,* 35 Iowa, 534; *Johnson v. Belden,* 49 Iowa, 301. See also *Chapman v. Abrams,* 61 Ala. 108, as shedding light on the question in hand.

If Allison have any recourse against the property mortgaged—(upon this we decide nothing)—it can not be made available by the process resorted to in this case. Sections 3149, 3150, 3157 of the Code of 1886 exert no influence in this case.

Affirmed.