## Jonas Kiplinger v. Alonzo Green.

*Landlord and tenant—Abandonment by tenant of leased premises—And surrender of lease— Without fault on the part of landlord—Operate to deprive tenant of all claim to crop of wheat put in under lease, to be divided equally between the parties—Replevin will not lie against landlord for harvesting the entire crop—Purchaser in good faith of tenant's interest before such forfeiture has superior equities—And may harvest wheat and hold his share after such abandonment—Prior to which it is treated as personal property—But afterwards as part of the land— Emblements—If term of lease is certain, and occupancy terminated by lessee's violation of same, doctrine of does not apply.*

1. Plaintiff moved onto defendant's farm in October, 1883, under an agreement to cultivate the same for the term of five years and five months from the first day of the following November, and to deliver one-half of all grain raised on the farm to defendant in the granary. [See opinion for further specifications.] In September, 1884, plaintiff served a notice on defendant that he should vacate the premises on April 1, 1885, for reasons stated in the notice [see opinion], and did remove on the day named, in pursuance of the intention expressed in the notice. In July, 1885, plaintiff attempted to harvest the wheat sown by him on the farm the previous fall, and was pre-

vented by defendant, who cut and threshed it, whereupon plaintiff, after demanding one half of the grain, replevied it from defendant.

*Held*, that whatever rights plaintiff could legally claim to the wheat must accrue from and rest upon the provisions of the.contract, and that when he voluntarily abandoned the farm, and forfeited the contract under his notice, he could no longer claim any rights under it.

*Held*, further, that if *before* such surrender of the agreement and of the possession of the land plaintiff had sold his share of the wheat to a purchaser in *good faith*, he would be entitled to harvest the same under the lease, because of equities which his vendor could not assert after such rescission of the contract, the crop being considered *personal* property during the *life* of the lease, and subject to levy or sale as such; but that on such abandonment and surrender the wheat became a part of the land and went with it to the defendant.

2.  Where the term of occupancy of leased premises is certain under the contract, and is not determined by the acts of the lessor, but by the lessee's violation of the agreement under which he holds, the doctrine of emblements does not apply.

Error to Eaton.    (Hooker, J.)    Argued April 28, 1886. Decided May 6, 1886.

Replevin.    Plaintiff brings error.    Affirmed.    The facts are stated in the opinion.

*Van Zile & Fox*, for appellant:

The contract is not a lease, which is properly a conveyance of lands and tenements for life, for years, or at will (2 Cooley's Blackstone, p. 317 ; 2 Bouvier's Inst. p. 255), and creates an estate in the tenant, and the words of which must be sufficient to explain the intention of the parties that one shall divest himself of the possession and the other come into it for a certain determinate time (Id.).

In order to constitute a lease, the occupant must have an interest in the soil and freehold : 1 Washb. Real Prop. 572 (marg. pag. 364).

The courts of this country have almost uniformly held such contracts to be, not leases, but cropping contracts, where the tenant is to cultivate the land and share the crops with the landlord. No estate is vested in the tenant, he having but a mere license to occupy the premises in common with the landlord : 1 Washb. Real Prop. 364 (marg. pag.); 4 Kent's Com. 95 ; Thompson's Law of the Farm, § 331 ; *Bernal v. Hovious*, 17 Cal. 542; *Caswell v. Districh*, 15

Wend. 379; *Putnam v. Wise*, 1 Hill, 234; *Aiken v. Smith*, 21 Vt. 172; *Randall v. Chubb*, 46 Mich. 311; and the authorities are agreed that under such contracts the parties are tenants in common of the crops: Cooley on Torts, 434; Thompson's Law of the Farm, § 332; 1 Washb. Real Prop. 572–3; *Fiquet v. Allison*, 12 Mich. 328; *Coe v. Wager*, 42 Id. 49; *McLaughlin v. Salley*, 46 Id. 219; *Sutherland v. Carter*, 52 Id. 471; *Walker v. Fitts*, 24 Pick. 191; *Bernal v. Hovious*, 17 Cal. 542; *Aiken v. Smith*, 21 Vt. 172; *Creel v. Kirkham*, 47 Ill. 344; *State v. Jewell*, 34 N. J. L. 259; and such title vests as soon as such crop exists so as to become the subject of ownership: *Walker v. Fitts*, 24 Pick. 191; and this action is based upon such vested title, and not upon any claim under the contract, except as proof of such title.

Plaintiff could not sue in assumpsit and recover the value of his services: *Roberts v. Wilkinson*, 34 Mich. 129; and the act of defendant forbidding plaintiff's harvesting the wheat, and his refusal to recognize plaintiff's right to any of the same, and his harvesting the crop, amounted to a tortuous assertion of right, and replevin is the proper form of action: *Fiquet v. Allison*, 12 Mich. 328; *Sutherland v. Carter*, 52 Id. 471.

Growing crops are subject to ownership, and are treated as property distinct from and without regard to the freehold; and in case of a lease they are the property of the lessee: *Stadden v. Hazzard*, 34 Mich. 76; and he may sell and convey a valid title while such crops are growing, and it cannot be defeated by any subsequent act of the lessee: *Miller v. Havens*, 51 Mich. 482; and they may be levied on and sold on execution: *Preston v. Ryan*, 45 Mich. 174; and may be mortgaged the same as personal property: *Coman v. Thompson*, 47 Mich. 22.

*Huggett & Smith*, for defendant:

The plaintiff was upon the farm by virtue of the contract, and whatever rights he had there must have accrued to him by or through its provisions; he put the lease in evidence to show his right to the wheat, and at the same time assumed that the agreement was not binding upon him as to its other provisions. This he could not legally do; he could not for any cause rescind the agreement in part, and hold it still binding where it might be for his advantage: *Peninsular Bank v. Hanmer*, 14 Mich. 208; *Widner v. Lane*, Id. 125; *Hubbardston Lumber Co. v. Bates*, 31 Id. 159, 169; *Dunks*

*v. Fuller*, 32 Id. 242–5 ; *Lampson v. Cummings*, 52 Id. 491 ; *Morse v. Brackett*, 98 Mass. 205.

The only theory upon which plaintiff can claim a right to this crop of wheat must be founded upon the doctrine of emblements. But *emblements*, as a legal term, signifies a right on the part of the tenant for an *uncertain* term, which has been terminated *without any fault on his part*, to take away the crops growing, although the estate itself has ceased to exist.

Neither of these elements exists in this case ; the term was certain and fixed, and the plaintiff abandoned the place without any act on the part of the defendant requiring him to do so. He voluntarily surrendered his right under this lease, and this extinguished all right that he had to the growing crop : *Stewart v. Doughty*, 9 Johns. 108 ; *Whitmarsh v. Cutting*, 10 Id. 360 ; *Bain v. Clark*, Id. 424 ; Wood's L. & T. p. 972, § 561, and note 7 ; *Nye v. Patterson*, 35 Mich. 413 ; *Dayton v. Vandoozer*, 39 Id. 749 ; Taylor's L. & T. § 535 ; 4 Kent's Com. 128 ; *Chandler v. Thurston*, 10 Pick. 205 ; *Bleecker v. Smith*, 13 Wend. 530 ; 1 Washb. R. P. (2d ed.) 103 ; *Carpenter v. Jones*, 63 Ill. 517.

This is a clear case of voluntary abandonment of the premises by the lessee, whose lease contains a forfeiture clause, to be operative in case of his failure to perform any of its conditions binding upon him. That a tenant would forfeit all claim to growing crops under such circumstances is fully recognized by the former decisions of this Court : *Nye v. Patterson*, 35 Mich. 413 ; *Dayton v. Vandoozer*, 39 Id. 749 : *Welsh v. Richards*, 41 Id. 593.

MORSE, J. The plaintiff in this action, on the fifteenth day of September, 1883, entered into the following agreement with the defendant :

"This agreement, made and entered into this fifteenth day of September, 1883, between Alonzo Green, of the city of Charlotte, county of Eaton, and State of Michigan, of the first part, and Jonas Kiplinger, of the second part, *Witnesseth*, that said second party hereby agrees to move onto and cultivate and farm the said first party's farm, where he now resides, lying in the town of Eaton, and city of Charlotte, in said county, for the term of five years and five months from the first day of November, 1883, on the following terms, viz. :

"Said second party is to do, or cause to be done, all the work,

furnish all the teams and implements necessary in so farming the premises, and is to furnish one-half of all the seed to be sowed or planted; and deliver one-half of all grain raised on said farm to said first party, in the granary on said farm, and one-half of the potatoes and vegetables that shall be raised, after they are dug, on said farm, as said first party may direct.

"Said first party is to furnish one-half of the seed for all such crops.

"Said first party is also to have one-half of all the hay, straw, and corn-stalks, after they are properly cut and secured by said second party as the first party may direct. Each party is to have one-half of the apples, and pick or gather the same. Said first party is to have all the cherries and grapes he wishes, that may grow on said farm.

"Each party is to have one-half of the pasture, also to furnish an equal amount of poultry, and share equally in its products.

"Said second party is to have a good garden, and divide the same as the other products of the farm.

"Said second party is to pay all the highway taxes on said farm, and is to keep in repair all the fences, and make such new fences as may be necessary on said farm, said first party furnishing the materials to repair and make the same; also to keep in repair all buildings occupied by him, and the windmill on said farm; and to have the use of all the dwelling-house on said farm, except the chambers, hall, and parlor of the upright brick-house, which shall be exclusively said first party's; also such portions of the cellar as he may desire to use.

"Said second party is also to use what barn room, stabling, and granary that is necessary to accommodate his farming work. All horses and other stock belonging wholly to said second party is to be fed from said second party's share of the products of said farm, or that which he may purchase.

"All sheep or other stock or poultry owned by both parties shall be taken care of by said second party, and fed from the products belonging to both parties.

"Said second party is to milk the cow or cows of said first party, and let him have all the milk he wants to use for his family, and the rest to make into butter for said first party's family use.

"Said second party is to have all the fire-wood necessary for his use, from said farm, and from the eighty acres in the town of Carmel belonging to said first party, as he, said first

party, may direct. Such pieces of land as are now let on said farm to other persons are excepted until their lease expires, and then said second party is to farm such pieces.

"Said second party is to feed and care for the undivided sheep and cows of said first party, the coming winter, from the hay and other feed owned by said first party.

"It is expressly understood and agreed that said first party is to remain in full possession, and have full control, of said farm, and all that pertains to it, and have full directions as to how all and what crops shall be raised on it by said second party. All of said farming shall be done in a good, thorough, workman-like manner by said second party. Upon the non-performance of any of the above specifications this agreement shall immediately become null and void. Both of said parties hereby agree to all of the above-mentioned specifications. . "ALONZO GREEN.
"JONAS KIPLINGER."

Under this agreement the plaintiff moved upon the farm about the twenty-third day of October, 1883, and the following summer put in a crop of wheat.

In September, 1884, he served the following notice upon the defendant:

"CHARLOTTE, MICH., September 30, 1884.

"*Mr. Alonzo Green, Esq.*—DEAR SIR: You are hereby notified and duly informed that I shall vacate the premises and farm on which I now reside, the same belonging to you, on the first day of April, A. D. 1885, for the following reasons:

"1. Owing to the unreasonableness of the contract framed by you, which I now find, and am aware, is contrary to all farming customs of the county and vicinity.

"2. On account of the deception and fraud practiced by you in framing said contract, material parts of which you failed to read to me, and which I was not aware it contained.
"Yours, JONAS KIPLINGER."

—And moved off from the premises the second day of April, 1885. He testified that after the service of the notice he spoke to the defendant once, and told him that if he would give him a better chance than he had under the contract he would stay on, but gave him to understand that he would not stay there unless better terms were given him.

The defendant let a portion of the premises to another tenant, who moved upon the same the day before the plaintiff left. The plaintiff testified, however, that he left the place in pursuance of the intention manifested in his notice, and because he found he could not stand the bargain contained in the contract.

The plaintiff undertook to harvest the wheat put in by him the summer before, but was prevented from doing so by the defendant, who gathered the same. He made a written demand upon the defendant for it, and brought replevin.

Upon the conclusion of the plaintiff's case, showing these facts, the counsel for the defendant, upon the trial, moved to strike out the evidence introduced in plaintiff's behalf as insufficient to warrant a recovery, which the court did, and thereupon directed the jury to find a verdict for defendant.

The plaintiff's counsel contend that this was error, and that upon the facts shown the plaintiff was entitled to recover for one-half the wheat; that the agreement between the parties was not a lease, but a contract to crop the land on shares; that the relation of landlord and tenant did not exist; that the parties were tenants in common in the wheat; and by the action of the defendant in cutting and threshing the same, and refusing to account for any of it to plaintiff, he was guilty of a conversion of plaintiff's share, for which plaintiff was entitled to bring replevin. They insist that the abandonment of the contract and the farm cuts no figure in the case, as plaintiff's interest in the crop vested as soon as the same was sown; that it became personal property, and he might have sold his share before he left the place, and the purchaser obtained a valid title thereto.

We find no error in the action of the circuit court.

It can make no difference in the law applicable to the facts in this case what was the particular name or nature of the plaintiff's holding under this agreement. His rights must be gathered from the contract, and considered in relation to its terms.

Whether it be called a lease or a mere cropping agreement, its construction and its effect, as far as the plaintiff's claim to

this crop of wheat is concerned, must be the same. He went upon the farm and put in the wheat under and by virtue of this instrument, and whatever rights he can legally claim must accrue from and rest upon its provisions; and his counsel, upon the trial in the court below, expressly stated that he based his right to recover upon the contract, and his acts under it.

When he voluntarily abandoned the farm, and forfeited the contract under his notice, he could no longer claim any rights under it.

He admits that, after serving the notice, he did nothing upon the farm except to care for the stock upon it.

There is no theory of the law under which the plaintiff could recover one-half of this crop under a contract which he had, upon his own motion, repudiated. If so, he might have abandoned the farm and thrown up the contract the next day after the wheat was sown, and held his share. If, before his surrender of the agreement and the possession of the farm under it, he had sold his share of the crop to another, purchasing in good faith, such assignee of his interest would have been entitled to reap and harvest the wheat under this agreement, because of equities which the plaintiff cannot assert after his rescission of the contract, the crop being considered while the agreement is in force as personal property, subject to sale or levy as such.

But when the plaintiff abandoned the premises and surrendered the contract, the wheat became a part of the land, and went with it. *Chandler v. Thurston*, 10 Pick. 205; *Carpenter v. Jones*, 63 Ill. 517.

The doctrine of emblements does not apply. The term of the plaintiff's occupancy of the premises was certain and definite under the contract. It was not determined by the act of the defendant, nor by any other cause than the violation by the plaintiff of the agreement under which he held. He cannot profit by his own wrong.

The judgment of the court below is affirmed, with costs.

The other Justices concurred.