JOHN KAMERICK, Respondent, v. LEWIS CASTLEMAN ET AL., Appellants.

**Kansas City Court of Appeals, December 6, 1886.**

| 23 | 481 |
|----|-----|
| 48 | 90 |
| 48 | 434 |
| 23 | 481 |
| 59 | 307 |
| 23 | 481 |
| 73 | 229 |
| 23 | 481 |
| 183 | 406 |

1. PLEADING—COUNTER-CLAIM—WHEN ADMISSIBLE TO BE PLEADED AND SET UP.—All independent express contracts, whether liquidated or unliquidated, are the subjects of counter-claim; and in all that class of cases in which a tort has been suffered and the law permits the sufferer to waive the tort and sue in *assumpsit*, and he prefers the latter, then a counter-claim may be made arising under the same contract. And where the actor elects to sue in tort, springing out of a contract, pleaded as inducement, the defendant should be allowed a counter-claim growing out of plaintiff's breach of that contract.

2. LANDLORD AND TENANT—LEASING OF LAND FOR SHARE OF CROP— EFFECT OF.—In the case of a contract for a lease of land, for a certain share of the crops to be grown upon it, it constitutes the parties to the lease tenants in common of the products of the farm, with the possession established by the relation of landlord and tenant. And the landlord has the right to enter the premises for the purpose of gathering and dividing, but not to regain possession by force or violence; and where he resorts to force he becomes a trespasser *ab initio.*

APPEAL from Cooper Circuit Court, HON. E. L. EDWARDS, Judge.

*Reversed and remanded.*

:Statement of case by the court.

This is an action in trespass, for wrongfully entering the close of plaintiff, and the consequent loss of a crop of corn standing in the field. The petition alleges that the plaintiff rented from the defendant, Castleman, certain lands for the year, beginning March 1, 1884, and ending March 1, 1885. That plaintiff had cultivated thereon a large crop of corn, which was standing in the field, matured, on the twenty-third day of October, 1885, when one Parish, the constable of the township in which said premises were situate, under a pretended writ of entry from a justice of the peace, wrongfully and unlawfully, and with force and arms, put plaintiff off of the premises, and thereby plaintiff lost a crop of corn, by reason of which he was damaged, etc. That said pretended writ of entry was without warrant of law and void; that the constable before executing the same demanded of the plaintiff therein, said Castleman, an indemnifying bond, who thereupon executed such bond with the other defendants, Thomas Wallace and George Cockrell, as sureties; and that said defendants incited and instigated the said constable to commit the wrong and trespass complained of.

The petition, as to said constable, was dismissed before trial. Cockrell and Wallace made answer tendering the general issue. Castleman answered separately, tendering the general issue, and pleading specially the contract of rent between him and plaintiff, whereby he had left to plaintiff, in February 1884, certain lands, on which the alleged trespass was committed, to be cultivated that season by plaintiff in corn, oats and wheat, on the shares. This defendant also pleaded that plaintiff had failed to perform the said contract on his part, to defendant's damage, which was set up as a counter-claim. On motion of plaintiff this counter-claim was

stricken out. On trial had before a jury, the evidence tended to show that in February, 1884, the defendant, Castleman, the owner of the premises in question, entered into a written contract with plaintiff, whereby he let to plaintiff certain fields and lands, to be cultivated in corn, oats and wheat, on the shares, the particulars of which more fully appear in the opinion of the court.

The defendant, Castleman, prior to the alleged trespass, claiming that plaintiff was in default in his rental, began action against him in a justice's court, under the landlord and tenant act. Judgment was rendered therein in favor of Castleman for the amount of money claimed, but the judgment entered by the justice did not contain any award of restitution of the premisis. On the writ of *fi fa* issued thereon the justice, however, made an order of restitution. It was under this writ that the constable delivered the possession of the premises to Castleman.

There was much evidence, *pro* and *con*, and as to the value of the corn and the amount taken by Castleman. Under an instruction from the court the jury were authorized to find for plaintiff the full value of the corn so taken or destroyed. The jury returned a verdict for plaintiff in the sum of four hundred and eighty dollars. From this judgment defendants have appealed.

GEORGE A. CASTLEMAN, COSGROVE & JOHNSTON and W. B. PENDLETON, for the appellants.

I. The counter-claim set up in answer was good in this action, and it was error to strike it out. *McAdow v. Ross*, 53 Mo. 199; *Richie v. Hayward*, 71 Mo. 560; *Emery v. Railroad*, 77 Mo. 339.

II. Castleman and Kamerick were tenants in common of the corn, under the agreement to share the crops grown upon the land in lieu of rent. *Steward v. Doughty*, 9 Johnson (N. Y.) 108; *Hatch v. Hart*, 40 N. H. 98; *Smith v. Tankersley*, 20 Ala. 215; *Walls v. Preston*, 25 Cal. 59; *Johnson v. Hoffman*, 53 Mo. 504.

It was, therefore, error for the court to instruct for the full value of the corn.

III. Castleman was also tenant in common of the lands. He held them in common with Kamerick. *Harrower v. Heath*, 19 Barb. 331; *Foote v. Calvin*, 3 Johnson (N. Y.) 216.

IV. Defendants, Wallace and Cockrell, had not any actual connection or participation in the alleged trespass, and are connected therewith constructively by reason of signing the bond of indemnity to the constable for the execution of the supposed writ of possession of the land. Putting Castleman into possession of the land did not affect the tenant's possession and right to the crop. *Parris v. Frink*, 49 N. Y. 24; *Daniels v. Brown*, 34 N. H. 494.

V. A tenant in common of the crop, Castleman had a right to enter *peacefully* upon the land and take the corn, and for such action cannot be held at all in trespass. *Fiquet v. Allison*, 12 Mich. 331; *Daniels v. Brown*, 34 N. H. 494.

DRAFFEN & WILLIAMS, with J. F. TAYLOR, for the respondent.

I. There was no error in striking out the counter-claim set up by Castleman. Plaintiff's action was for tort, and did not spring from, and was in no manner connected with a contract. The counter-claim did not "arise out of the transaction set forth in the petition, as the foundation of plaintiff's claim, nor was it connected with the subject of the action." Whittlesey on Pract., sect. 190; Pomeroy's Rem. Rights, sect. 788; *Richie v. Hayward*, 71 Mo. 560; *People v. Dennison*, 84 N. Y. 272; *Barnes v. McMullins*, 78 Mo. 260.

II. The relation of landlord and tenant existed between the defendant, Castleman and plaintiff, notwithstanding the rent was to be paid by a part of the crop. Where possession of the land is given, it is held to create a tenancy. *Johnson v. Hoffman*, 53 Mo. 504; *Alwood v. Ruckman*, 21 Ill. 200.

III. The terms of the agreement were broad enough to give plaintiff the sole possession of the land, and the actions of the parties show that such was their intention. *Taylor v. Zapp*, 14 Mo. 489.

IV. In any view of the matter plaintiff was entitled to a verdict. He is entitled to recover the value of the corn. He was the owner thereof until Castleman's rent was set off to him. *Atwood v. Ruckman, supra;* Waterman on Trespass, sect. 967. Defendant, Castleman, having wrongfully evicted plaintiff was not entitled to rent. Taylor on Landlord and Tenant, section 378.

V. The defendants, Cockerill and Wallace, having signed the bond of indemnity, are liable in this action. *Wetzel v. Waters*, 18 Mo. 396 ; *Ball v. Loomis*, 29 N. Y. 412.

VI. The proceedings under which this action was taken were manifestly void. Defendant took the crops and used them, and by the action of the lower court is required to pay for them.

PHILIPS, P. J.—I. The first question, in order of proceeding in the trial court, for determination is, the correctness of the action of the court in striking out the counter-claim. The contention of respondent is that the action is not founded on the contract of rent, but is in tort, for the wrongful entry and appropriation of plaintiff's corn ; and that where the action is purely in tort a counter-claim predicated on contract between plaintiff and defendant is not permissible. As an abstract proposition this may be true, but the tort may be so connected with and dependent upon the existence of the contract as to connect the counter-claim sufficiently with the subject of the action as to admit it.

The case of *People v. Dennison* (84 N. Y. 272), cited by respondent, was an action of fraud. The defendant contracted with the state of New York for doing certain work in the construction of a canal. The defendant procured, by false representations from his engineers, false and fraudulent certificates and vouchers

as to the work, whereby he defrauded the state out of large sums of money. The action by the people was based solely on the fraud, to recover back money thus obtained from the people, independent and outside of the contract. The defendant set up as a counter-claim a sum due him on his contract with the people. It was disallowed, on the ground that the action was on the fraud wholly disconnected from the contract.

The case of *Barnes v. McMullin* (78 Mo. 260), holds that a counter-claim based on the fraud and deceit practiced by plaintiff in procuring a contract of sale, and not for a breach of the contract, could not be entertained where the plaintiff's action was based upon a promissory note having no connection with the contract of sale. But the learned commissioner, who wrote the opinion, also held, that all independent express contracts, whether liquidated or unliquidated, are the subjects of counter-claim, and that in all that class of cases in which a tort has been suffered, and the law permits the sufferer to waive the tort and sue in *assumpsit*, and he prefers the latter, then a counter-claim may be made arising under the same contract.

The converse of this proposition must be equally correct, that where the actor elects to sue in tort, springing out of a contract, pleaded as inducement, the defendant should be allowed a counter-claim growing out of plaintiff's breach of that contract.

Our practice act provides that the defendant may plead as a counter-claim "a cause of action arising out of the contract or transaction, set forth in the petition as the foundation of the plaintiff's claim, or connected with the subject of the action."

In *Empire Transportation Company v. Boggiano et al.* (52 Mo. 294), the company sued defendant to recover a charge for the transportation of certain goods over its line. The answer set up as a counter-claim damages resulting from plaintiff's negligence as a common carrier in transporting certain fruit for defendant.

It was urged against the counter-claim that the negligence of a common carrier, being a common law liability, and the subject of an action in tort, could not be pleaded as a counter-claim. The court say : "Although the plaintiff's liability in this case is for a tort growing out of the negligence and delay as a common carrier in the transportation of the defendant's goods, the cause of action, so far as the defendant is concerned, arises out of the contract of affreightment, and hence in declaring at common law for the tort, the contract was always alleged in the declaration by way of inducement, So under our statute the contract must be alleged as the inducement to the cause of action, and as showing the parties, connection with the case. In this light the contract is looked to as the origin of the cause of action. The statute contemplated that where a suit is founded on a cause of action connected, in any manner, with a contract, a counter-claim arising out of any other contract between the same parties may be set up. * * * It is sufficient if the defendant's right to the damages relied on as a counter-claim grows out of a contract between him and plaintiff."

In *McAdow v. Ross et al.* (53 Mo. 199), one Smallwood, as the owner of the property, contracted with one Ross to make certain building improvements thereon. McAdow furnished certain materials which were used therein by Ross. In an action by McAdow to enforce a mechanic's lien on this property for said materials, Smallwood answered that plaintiff became surety on the contract between him and Ross, whereby he guaranteed the faithful execution of the work by Ross, and pleaded as a counter-claim damages resulting from Ross' failure to keep and perform his contract. It was held to be admissible, as being "connected with the subject matter of the action." The court say : "If the claim be for a debt, or damages growing out of the subject of the action, or arise out of the transaction set forth in the petition as a ground of action, it is enough." In support

of the rule the case of *Curtis v. Barnes* (30 Barb. 225), is cited. There the parties submitted a matter in controversy to arbitration, but before the hearing was completed the plaintiff withdrew therefrom, and brought suit on his claim. The defendant was allowed to plead as a counter-claim damages consequent upon plaintiff's abandonment of the submission to arbitration. While the action of McAdow cannot be said to have grown out of any contract between him and Smallwood, but is rather a statutory remedy enforceable ' against the property of the owner, the counter-claim obtained as growing out of the breach of the contract between Ross and Smallwood, for which McAdow vouched, and as being connected with the subject of the action, as its initial ground.

The case of *Ritchie v. Hayward* (71 Mo. 560), is certainly authority against the broad proposition, that where the action is in tort, a counter-claim will not lie. That was an action in trover for the wrongful conversion of certain gunny sacks. The defendant answered that the plaintiff had contracted with him for the sale and delivery of a quantity of potatoes of a given quality, to be delivered in gunny sacks. That plaintiff sent him potatoes in the sacks in controversy,. but the potatoes were of an inferior quality, and asked damages, by way of counter-claim for the breach of contract. The court, through Hough, J., said : " If the facts stated by the defendant be true he certainly has a cause of action against the plaintiff. It is not, however, a cause of action arising out of any contract set forth in the petition, for no contract is therein set forth. The facts set forth in the petition are, that the defendants came into the. possession of certain sacks of the plaintiff and wrongfully converted them to their own use. The details of the transaction, the evidential facts, are not stated, but the ultimate facts only, those which will entitle the plaintiff to relief, when established by other facts at the trial. * * * It (the transaction)

must be held to include all the facts and circumstances out of which the injury complained of by him arose, and if these facts and circumstances also furnished to the defendant a ground of action, against the plaintiff, the defendant will be entitled to present such cause of action as a counter-claim, showing by proper averments that it is a part of the same transaction which is made the foundation of the plaintiff's claim. In this view of the case, it is immaterial what form of action is adopted by the plaintiff." The court then cite approvingly Pomeroy on Remedies, section 788 : "Whenever the facts are such that an election is given to the plaintiff to sue in form either for a tort or on contract, and if he sues on contract, the defendant may counter-claim damages for the breach of that contract, the same counter-claim may also be interposed when the suit is in form for the tort." The principle of these cases is recognized, if anything in a more extreme degree, in *Emery v. Railway Company* (77 Mo. 339.)

The petition in the case at bar, by way of inducement, alleges the contract of lease. It also refers to the proceeding in the justice' court under that contract, which led to the writ of ouster. The theory on which plaintiff tried his case below, and on which he insists on this appeal, is that the contract was one of lease for a year. Even if it be for the season, as contended by defendants, although that contract contained no express provision for quiet enjoyment, it arises from implication in all such transactions. "It is to be understood as a condition of his (the lessor's) right to demand rent, that the lessee shall not be disturbed in his possession of the demised premises during the term by the lessor." Taylor L. & T., sect. 304 (7 Ed.)

Manifestly, therefore, for the wrongful invasion of plaintiff's possession by Castleman the latter had his election to sue on the contract or for the tort. By electing to pursue the latter remedy, he could not, according

to the authorities *supra*, cut off the defendant's right to counter-claim for damages growing out of the breach of·contract of rent.

As will appear from a subsequent part of this opinion, the plaintiff's action is in trespass for the wrongful and forcible entry on the land, with consequent injury to the crop, thus making the injuries resulting to the possession and the personal property inseparable. The plaintiff's whole cause of action is bottomed on the contract of lease. It is that which gave him the right of possession, which he claims has been invaded. It is that which gave him a right to claim the corn grown on defendant's land. It must, therefore, follow that when he invokes the contract, as the foundation of his claim, a counter-claim growing out of his own breach of that contract must obtain, as being connected with the sub-ject of the action.

The statute allowing counter-claims was designed to prevent multiplicity of suits. It should be liberally construed, and the rules respecting its application are constantly broadening.

Our conclusion is that the trial court erred in striking out the plea of counter-claim.

II. As this is an action in trespass, and the plaintiff recovered, under the instruction of the court, the whole value of the corn taken, the important question to be determined is, was the plaintiff so far the exclusive owner, or entitled to the exclusive possession, of the property as to authorize the recovery? This involves the construction of the contract between Kamerick and Castleman. It opens with the statement, that "Lewis Castleman has this day let to John Kamerick certain lands," on a given side of a public road. Part of the land was to be cultivated in corn, part in oats and part in wheat. That portion respecting the corn is as follows :

"It is to be thoroughly broken and cultivated, ploughed once a week, if it is not too wet, until ready to 'lay by,' and when ready to gather, is to be gathered

and divided in the proportion of two-fifths to Castleman and three-fifths to Kamerick, or forty bushels to Castleman and sixty bushels to Kamerick out of every hundred bushels of corn gathered and cribbed and penned." It then provides for good husbandry, and the return of the premises to plaintiff in good condition, etc.

It is observable that no time is fixed by the contract for the termination of the letting. Nor is there any stipulation as to who shall gather the corn, nor requiring plaintiff to make delivery to Castleman of his share. And what gives some significance to this silence of the contract, respecting the harvesting and delivery, is the fact that the clauses of the contract respecting the oats and wheat do contain such provisions. The first conclusion of law is, that this contract is to be viewed as one for the cropping season only. The petition alleges that the trespass was committed on the twenty-third day of October, 1884, and that "said corn was standing in the said field *fully matured.*" The corn had then ceased to draw nourishment from the soil. It was no longer held for cultivation by plaintiff. It was ready to be gathered and divided. In the absence of any express stipulation as to who should gather and divide, the presumption is that each should gather his own share and the division should be made mutually. And as a necessary sequence to this, each, after the maturity of the crop, would have the right of ingress and egress, to gather and divide. The tenancy of defendant of the land on which the corn was grown was practically at an end, after allowing a reasonable time for the gathering and division. What, then, was the legal right and relation of Castleman to this corn at the time he entered?

There is much discussion in the reported cases touching this question, as to whether the parties are to be regarded as tenants in common of the crop as of a chattel. There are courts of high authority which hold that notwithstanding the rent is to be paid in a share of the crop grown, where the tenant is to have the pos-

session of the land, the tenant and landlord are not to be treated as tenants in common, that until division is made the tenant is entitled to the exclusive possession. Principal among the courts so holding is that of Indiana. See *Railroad v. Lilard*, 94 Ind. 313, 48 Am. Rep. 155, where the authorities are reviewed.

On the other hand there are courts of high authority which hold that where there is a letting, providing that all crops shall be divided in given shares in payment for the use, the contract takes effect by way " of reservation, and the share reserved is always the property of the owner of the land, without severance or delivery, though both of them be stipulated for ; " that where the reservation is of an undivided share, the property of that undivided share is in the lessor, and the residue is in the tenant, and they are, therefore, tenants in common of the whole until division is made. *Hutch v. Hart*, 40 N. H. 93 ; *Putnam v. Wise*, 1 Hill, 234 ; *Bernal v. Havious*, 17 Cal. 542 ; *Lowe v. Miller*, 3 Gratt. 205 ; *Smyth v. Tankersley*, 20 Ala. 212 ; *Taylor v. Bradley*, 39 N. Y. 129.

In *Alwood v. Ruckman* (21 Ill. 200), the more conservative doctrine is announced, that under such a contract the relation of landlord and tenant does not necessarily arise, but the parties may be tenants in the crop. Much depends upon the terms of contract of letting, whether for a term of years or for a year, indicating the tenant's right of exclusive possession until division be made.

In *Johnson v. Hoffman* (53 Mo. 508) our supreme court hold that this is a question to be much determined from the peculiar facts and circumstances of each case. The contract of lease in that case clearly indicated an actual lease, for it not only employed the apt words, but stipulated for a term of three years. The tenant was to have one half of the crops grown. The court say : " The crops, however, were to be divided between the parties. They were, therefore, ten-

ants in common of the products of the farm with the possession of the land in the plaintiff as the tenant of the defendant as his landlord. * * * The rights of the defendant in the crops, as tenant in common, were not inconsistent with their relations as landlord and tenant. Whether plaintiff was entitled to the possession of the place or not, the defendant was entitled to the possession of his share'of the crops.'' Even the court in Indiana, which has gone to the farthest extent in denying the joint ownership in such crops, concedes that where the contract merely provides for cultivation by the tenant until the crop is laid by, and there is no provision requiring further delivery by the tenant, the landlord becomes the owner of his share after the laying by. *Hart v. State*, 29 Ind. 200 ; *Lindley v. Kelly*, 42 Ind. 294.

In the case at bar the letting was only for the farming season. The plaintiff was to plough until "laid by." He was not required to make any delivery. The corn was "fully matured," awaiting gathering.

Under such state of facts we do not hesitate to hold, on the great weight of authority, and especially on the language of our supreme court in *Johnson v. Hoffman* (*supra*), that plaintiff and defendant, Castleman, at the time of the alleged trespass were tenants in common of this corn. For any trespass commiited thereon on the twenty-third day of October, 1884, both parties would have been required to join in the action.

III. It would follow, ordinarily, from the foregoing conclusion that one joint tenant could not maintain trespass against the other for taking the joint property, as the possession of one such tenant is the possession of all. And had the defendant, Castleman, obtained his possession of the premises and the crop peaceably, this action could not lie, for the conversion of the whole estate an action of trover might lie. *McCoy v. Hyatt*, 80 Mo. 130.

But the defendant, Castleman, by his action before

the justice of the peace, and sending the constable armed with colorable process to regain the possession of the premises, recognized the fact, even viewing the letting as for the farming season, that the plaintiff was holding the premises, and as he had a reasonable time after the season was out to gather his crop and make the division, while the plaintiff had the right to enter for the purpose of gathering and dividing, he had no right to regain such possession by force or violence. The ancient common law right of entry and distress without process does not exist in this state. *Crocker v. Mann*, 3 Mo. 472. And where he resorts to force he becomes a trespasser *ab initio* ; "and the action is maintainable for all damages resulting from the tort to the real estate, and from the removal of the common property." *Daniels v. Brown*, 34 N. H. 459.

The method resorted to by Castleman was illegal. The process with which he and his co-defendants armed the constable was unlawful. It was by false color of his office, and the apparent authority attaching to it, that the plaintiff was forced to yield the possession. Once in the defendant, regardless of the joint interest of the plaintiff, took and appropriated the whole. Under such circumstances I think defendants are to be regarded as trespassers *ab initio*, and for all damages immediately resulting therefrom in the appropriation of the common property they must be held.

IV. But the court erred in authorizing, by its instruction, the jury to find for plaintiff the full value of the corn. The plaintiff was only entitled to recover his share, with interest from the date of conversion. *Daniels v. Brown, supra.*

The judgment of the circuit court is reversed and the cause remanded. All concur.