JAMES N. DEITZ, Plaintiff in Error, v. HUGH LEETE AND J. W. ENGLISH, Defendants in Error.

Kansas City Court of Appeals, January 9, 1888.

1. MECHANIC'S LIEN—ENFORCEMENT OF BY PARTY GIVING BOND OF INDEMNITY TO OWNER FOR CONTRACTOR — CASE ADJUDGED. Although a party executes a bond, as did this plaintiff, contemporaneously with the builder's contract, the purpose of which was to secure the owner of the property against such a claim as this (being that of a lien for material furnished), the mere fact that the lienor has executed such bond of indemnity does not prevent the obligor from filing and enforcing such lien against the property of the obligee. But the owner may set up as defence in such a suit the damage which he has suffered, against which the plaintiff had undertaken to indemnify him, as a counter-claim, or by way of recoupment.

2. ——— PRACTICE ACT, SCOPE OF.—It was among the more important remedies sought to be furnished by the code of practice, to obviate circuity of action, by permitting the parties, in one and the same action, to adjust and determine all their respective rights and claims connected with, and growing out of, the subject-matter of the action.

ERROR to Jackson Circuit Court, HON. TURNER A. GILL, Judge.

*Affirmed.*

Statement of case by the court.

This is an action to enforce a mechanic's lien, and to recover the contract money. The defendant, Leete, was the contractor, and the defendant, English, was part owner of the building on which the lien is sought to be enforced. The plaintiff furnished material for the erection of this building, as a subcontractor under Leete. Having complied with the law authorizing him to file a mechanic's lien, this suit is to enforce the same. As the issue here is between the plaintiff and English, it is only necessary to set out English's answer, which is, substantially, as follows:

(1) Denies every allegation of the petition not in his answer admitted. (2) States that at all times in the petition mentioned he and C. C. English owned the real estate described therein, and were doing business as English Brothers, and that as English Brothers and a firm they erected said building thereon; that to that end they contracted, in writing, with Hugh Leete, to do all the work and to furnish all materials for foundations and cellars, and retaining walls and piers, all to be done strictly according to plans and specifications attached to said contract; that Leete was to complete his work by June 1, 1886, for $3,104.66; that, for failure to complete by that date, Leete was to pay English Brothers twenty-five dollars per day thereafter till finished, as liquidated damages; that Leete was to get twenty-five dollars extra for each day remaining between finishing his work and June 1, 1886; that Leete was to be paid eighty-five per cent. in value of the work he did once every two weeks, and this only on production of the architect's certificate, stating the amount due for materials and work, and the entire balance when his whole work was finished; that alterations were to be allowed, and the time of completion and price modified in proportion to the extent of such alterations. And to secure Leete's performance of said work, English Brothers obtained from him an obligation in writing, wherein

542        28 Missouri Appeal Reports.

said Leete, J. N. Deitz, H. Peterson, and Robert Struck, on April 21, 1886, agreed and bound themselves to pay said English Brothers the sum of three thousand dollars, conditioned to be void "if said Leete should, in all respects, well and truly keep and perform, upon his part, the said contract with said English Brothers, in strict accordance with the terms thereof, and should further indemnify and save harmless the said English Brothers from any and all loss, damage, or expense to which they, the said English Brothers, should or may be subjected by reason of any failure of said Leete in the premises," otherwise to be of force. Said Leete broke the terms of said contract with him, failed to complete the said work in the specified time, or at all, and abandoned the same about July 4, 1886, and refused to finish it; and said Leete failed to remove the earth from the cellar, and failed to point much of the stone-work, to the damage of said English Brothers in the sum of seventy-five dollars. The contract price was $3,104.60, and the value of the additional work was $690.70, a total of $3,795.30, while to protect said premises from mechanics' liens, said English Brothers have paid out for said work $3,945.59, and thereby plaintiff owes them $156.29, and is further indebted to them on said bond for unfinished work, seventy-five dollars, and for delay in finishing said work the sum of seven hundred and fifty dollars; that the total of plaintiff's indebtedness on said bond is $975.24, and that plaintiff is held therefor; and "specifically agreed to protect said English Brothers from loss or damage on said contract as aforesaid, and is, therefore, entitled to claim nothing from defendants in this action."

The reply tendered the general issue.

The plaintiff's evidence tended to establish his claim against the contractor, Leete, and the fact of his having complied with the provisions of the statute respecting the filing of liens by subcontractors. The defendant read in evidence, against the objection of plaintiff, the written contract between plaintiff and

Leete for the erection of the building, which contract was under seal; also, the bond executed by Leete and plaintiff to English, as stated in the answer. This bond was also under seal, and was made contemporaneously with the contract aforesaid. The defendants' evidence also tended to support the allegations of the answer as to the default of Leete on his contract, and the defendants' claim against Leete for such default.

The court, in substance, instructed the jury that, if they found the contract, as stated, that the work done and materials furnished should be according to the terms of the contract, read in evidence, and that plaintiff obligated himself to save harmless the defendant, English, from any and all damages by reason of the failure of Leete to perform the contract on his part, and if they further found that Leete had failed to pay for the labor and materials called for in the contract, and the claim of plaintiff herein is a part of such materials and labor, or either, they should find for defendant, provided the jury further found that defendant, English, had already paid the contract price and the value of the work done and materials furnished.

The jury returned a verdict for the plaintiff against defendant, Leete, for the sum of $525.95, and found the issues for the defendant, English.

Leete abided the result of the trial. Plaintiff prosecutes this writ of error.

MILTON CAMPBELL, for the plaintiff in error.

I. It was error to admit in evidence the building contract between English Brothers and Leete; and also error to so admit the bond of indemnity given by Leete to English Brothers. Both are irrelevant and immaterial to the question of a lien on the property. No counter-claim is permitted against a lien. Rev. Stat., secs. 3172, 3176, 3185, 3191, and 3522.

II. The instruction given for defendants was full of errors and very misleading. (1) It submits the construction of the contract of indemnity to the jury,

asking the jury whether, by that contract, Deitz contracted that Leete's work should be done according to Leete's contract, and whether Deitz thereby engaged to save English Brothers harmless. This is for the court to say. *Gas Light Co. v. St. Louis*, 46 Mo. 128 ; *Michael v. Ins. Co.*, 17 Mo. 23. (2) That bond was simply an agreement of Deitz and others to pay English Brothers three thousand dollars, if Leete failed in his contract, and if Leete failed to indemnify and hold English Brothers harmless. Defendant, English, says this in his answer. Hence the instruction was misleading. (3) And said instruction erroneously ordered a finding against the lien on said bond, in case plaintiff's demand against Leete was for materials furnished and used in the building of J. W. English. The very ground of the lien under section 3172, Revised Statutes, is the reason assigned for its defeat. This bond is not an estoppel. *Hartman v. Berry*, 56 Mo. 487; *Haden v. Wulfing*, 19 Mo. App. 354. (4) Nor does it become an estoppel because English has "improvidently paid" to Leete all the money owing to him under the building contract. No transactions between English and Leete can repeal article 1, chapter 47, Revised Statutes, nor affect plaintiff's rights thereunder. Their acts fail to make said bond of indemnity a defeasance to plaintiff's lien. *Garrett v. Berry* 3 Mo. App. 197 ; *Atwood v. Lewis*, 6 Mo. 392 ; *Bircher v. Payne*, 7 Mo. 462 ; *Bond v. Worley*, 26 Mo. 263 ; *Henry v. Hinds*, 18 Mo. App. 497. (5) The answer shows that English Brothers were entitled to full information as to the amount due for materials before Leete could get a dollar on the work. It was their duty to see that the material was paid for. *De Witt v. Smith*, 63 Mo. 263. (6) And finally the lien depends on these facts only : (*a*) That Leete owed Deitz for material as stated ; (*b*) that Deitz complied with the statute in asserting his rights ; (*c*) and that English had not honestly exhausted the sum due Leete in paying for material and work on the building. All these essentials are ignored in this

instruction, and an offset is allowed against a lien; the law in Deitz's favor is nullified by the state of account between Leete and English, and the fact that Deitz and others agreed, on contingencies, to pay English Brothers three thousand dollars. This mode of repealing a statute is not mentioned in the books.

WARNER, DEAN & HAGERMAN, for the defendant in error.

I. The owner of the land in a suit such as this can plead anything which legally or equitably defeats the lien. Phillips on Mech. Liens [2 Ed.] sec. 423; Rev. Stat., sec. 3179. Such defence is also allowable to avoid circuity of action. Phillips on Mech. Liens [2 Ed.] sec. 424; *Winder v. Caldwell,* 14 How. (U. S.) 434; *Withers v. Green,* 9 How. (U. S.) 213; *VanBuren v. Digges,* 11 How. (U. S.) 461; *Trustees v. Heise,* 44 Md. 455.

II. The bond of plaintiff operated as a waiver of the right to enforce a lien against the building when the original contractor could not. The privilege conferred by statute of a mechanic's lien may be waived by contract to that effect. Phil. Mech. Liens (2 Ed.) sec. 272. Waiver may be by implication as well as by an express agreement, and may be inferred from the conduct of the parties. Phil. Mech. Liens (2 Ed.) sec. 273, where it said: "What constitutes a waiver must be determined from the circumstances of each particular case, it being essentially a question of intention; such intention implying either an actual determination of the lien holder to surrender the right, or such acts on his part that it may be reasonably supposed he had waived his security of lien, in which latter case he would be estopped from afterwards asserting it." And in the section last cited (p. 454) the learned author says: "A party going security for a contractor that no liens shall accrue against a building cannot himself file a lien for material furnished the contractor."

III.   Again, the defence in this case can be sustained upon the principle establishing the doctrine of equitable setoff, as stated in Story's Equity Jurisprudence (8 Ed.) sections 1430 to 1441, and especially sections 1433, 1435, 1436, 1437, 1437a, 1437b.   It is clearly settled that the fundamental principles underlying the mechanic's lien law are largely equitable, and when, as in Missouri, the claimant may proceed against the builder and owner by the same proceeding with a right of personal action against the builder, and the enforcement of the lien against special property improved, the proceeding in its very nature is partly a common-law and partly a chancery proceeding.   So far as it relates to the debtor it is analogous to a common-law proceeding, and so far as it relates to the enforcement of the lien it is analogous to a chancery proceeding and in the nature of the foreclosure of a mortgage.   Phil. Mech. Liens, sec. 308, and cases cited.

IV.   That the proceeding is equitable so as to be subject to all equitable defences is well illustrated by the practice in the federal courts, where law and equity are administered separately, and where it has been uniformly held that a suit to enforce a mechanic's lien must be brought, like a suit to foreclose a mortgage, on the equity side of the docket.

V.   The record in its present shape protects the plaintiff.   If he had sustained his lien and compelled defendant to pay his claim, and defendant in turn had sued him on his bond and compelled repayment, then he would have to turn around and sue the original contractor, if he was the surety of the contractor, and recover as for contribution, and in the end have just what he has now—a judgment against the contractor.   The right result was reached by the judgment below, and we submit the same should not be disturbed.

Philips, P. J.—If the question were *res nova* in this jurisdiction, I should hold that, where a party executes a bond, as did this plaintiff, contemporaneously

with the builder's contract, the very object and purpose of which was to secure the owner of the property against such a claim as this set up by the plaintiff, and on the faith of which the owner of the property had paid off the contractor and other materialmen to the full amount of his contract price, the obligor in such bond would be clearly estopped from asserting such lien. It is, in legal effect, a guaranty on his part to the owner that no lien shall be filed against the owner's property, as no such lien would ever arise where the contractor pays for the material as he was required to do by his contract. But the rule seems to be otherwise in this state. In *Hartman v. Berry* (56 Mo. 487), followed in *Hayden v. Wulfing* (19 Mo. App. 354), it is held that the mere fact that the lienor has executed such bond of indemnity does not prevent the obligor from filing and enforcing such lien against the property of the obligee. But these courts have never held, as I am aware of, that, where the contract and bond have been broken, there was no mode of defence open to the owner of the property, when sued by the subcontractor to enforce the lien, to enable him to have the benefit of the bond before the obligor could sell him out of house and home on a judgment, against which the obligor had covenanted to protect the owner. A close examination of the decision in the *Hartman case* will make it clear that the court meant to hold no such doctrine. On page 491, the court say: "From the face and tenor of the bond given to Bates it is manifest that its only object was to secure her in the payment of the money loaned to Griswolds, for which the deed of trust was executed. The object was, that the deed of trust might not be swept away by liens filed under the mechanic's lien law. There is no allegation in the answer that Bates was injured, or if injured, to what extent. The bond itself would not operate as a bar or estoppel against filing liens. If Bates lost her money, or any part thereof, by reason of such liens being filed, the damage so sustained might have been set up as a

counter-claim, or if her lien was about to be enforced by the sureties in the bond, which endangered her debt, she might perhaps enjoin the collection till her debt was paid."

There is, however, something more in the answer of defendant than the allegation of the execution of the bond by plaintiff as surety. There is an express plea of *damnificatum*. It is alleged that the contractor had not kept his contract; that he abandoned it before its completion, to defendants' damage; that he had not protected it against mechanics' liens, whereby defendant had paid out more than the contract price, to-wit, $156.29; for unfinished work, seventy-five dollars; delay in finishing said work, seven hundred and fifty dollars, and the like. If these facts were true, there existed in favor of the defendant, at the time of filing his answer, a cause of action against the plaintiff on his bond, although it may be said it was merely a bond of indemnity, because the defendant had suffered loss and damage, against which the plaintiff had undertaken to indemnify him. *Jones v. Childs*, 8 Nev. 121; *Belloni v. Freeborn*, 63 N. Y. 384; *Tankersly v. Anderson*, 4 Des. 43; *Carman v. Noble*, 9 Pa. St. 371.

The *Hartman case* holds that the very moment the plaintiff brought this action, even without a judgment, he became liable on his bond for the amount. In *Trustees v. Heis & Co.* (44 Md. 455), the action was brought on the equity side of the court to enforce a mechanic's lien; the practice there requiring such actions to be brought on the chancery side of the court. The plaintiff had given to defendant, owner of the property, a bond of indemnity, as here. The court said it would be grossly inequitable to allow the claimant, the obligor, to proceed to the enforcement of his lien, and the possible sale of the church property, in the very face of his bond that no such lien should exist. In that case there does not appear to have been any other breach of the contract than the suffering of the lien in question to be placed upon the property. So the court,

in the exercise of its equity powers, held that the trial court should have stayed the foreclosure proceedings, and retained the bill until such time as the defendant might bring an action at law on the bond, and should he recover thereon, he could plead the amount of the judgment as an equitable setoff against the claimant's claim. But under our practice act I can see no reasonable objection to the defendant's right to avail himself of the defence as a counter-claim, or by way of recoupment. The court in the *Hartman case* (*supra*) expressly say that the damages could be pleaded by way of counter-claim. And this course was pursued, unchallenged by the parties, in *McConey v. Wallace* (20 Mo. App. 377). In *Winder v. Caldwell* (14 How. [U. S.] 434) the court say : "It is well settled, that a total or partial failure of consideration, acts of nonfeasance or misfeasance, immediately connected with the cause of action, or any equitable defence arising out of the same transaction, may be given in evidence in mitigation of damages, or recouped ; not strictly by way of defalcation or setoff, but for the purpose of defeating the plaintiff's action, in whole or part, and to avoid circuity of action." It does seem to me that it would be a most useless and meaningless formula, to permit this plaintiff to enforce his lien against the defendant's property, collect his money to-day, and then to-morrow allow the defendant to turn around and sue the plaintiff to recover back the very money paid over to him the day before. It was among the more important remedies sought to be furnished by the code of practice to obviate just such circuity of action, by permitting the parties, in one and the same action, to adjust and determine all their respective rights and claims connected with, and growing out of, the subject-matter of the action. See *Kamerick v. Castleman*, 23 Mo. App. 486. The contract for the building of this house and the execution of the bond of indemnity were simultaneous acts, parts and parcels of the same transaction. The very claim which the plaintiff is seeking to assert against the defendant's

property grows out of a breach of the contract, which the bond undertook to protect the defendant against. His recovery, therefore, would be in the face of his indemnity, on the faith of which the defendant had paid over to the contractor, and other materialmen, the whole contract price.

The instructions given by the court, although subject to some verbal criticism, perhaps, and might have gone further and been made to apply to the damages already sustained by the defendant as a measure of recoupment or counter-claim, yet, the jury, under the instructions, did find the fact to be that the defendant had wholly performed the contract on his part, by paying out the whole contract price for the work done and materials furnished for the building, and that this claim is for an excess over and above the contract. Why, then, should the plaintiff recover, when the very sum thus asked for was a breach of his bond, and which he must return to the defendant, for so it is "nominated in the bond."

The judgment was for the right party, and, the other judges concurring, it is affirmed.