## TAACK v. UNDERWOOD.    (No. 2347.)

(Court of Civil Appeals of Texas.    Amarillo.
Nov. 19, 1924.)

1. **Chattel mortgages** ⊚⟹138(3) — **Landlord's lien held superior to chattel mortgage on crop.**

Landlord's lien on crops, under Vernon's Sayles' Ann. Civ. St. .1914, art. 5475, for rent and money and supplies furnished tenant for making, harvesting, and marketing crops, held superior to lien of chattel mortgage on crop.

2. **Landlord and tenant** ⊚⟹326(1)—**Landlord may gather and market crops abandoned by tenant, and apply proceeds to indebtedness.**

On tenant's abandonment of crops, landlord may take charge of, gather, and market them, and apply proceeds to tenant's indebtedness.

3. **Landlord and tenant** ⊚⟹326(5, 6) — **Landlords using ordinary care and good faith in disposing of abandoned crop not liable to tenant for conversion.**

Landlords need only use ordinary care and diligence, and exercise good faith, in disposition of crops·taken charge of by them on abandonment by tenant, and, having done so, are not liable to tenant for conversion.

4. **Landlord and tenant** ⊚⟹326(1) — **Lessors may enter premises and care for crops on tenant's abandonment thereof, though not bound to gather and market crops by stipulation authorizing them to take· possession.**

Stipulation of lease that lessors may cancel it and take possession of growing· crops, on tenant's violation of conditions, ·does not bind them to gather and market crop on tenant's abandonment of premises, that duty resting on tenant, but latter, having repudiated contract, can claim no rights thereunder not accorded him by general principles of equity, and lessors may enter on premises and care for crops as if no lease were made.

5. **Landlord and tenant** ⊚⟹330(1)—**Purchaser of crop, abandoned by tenant, from lessors, held not liable for profits to mortgagee of crop.**

Purchaser of growing crop from lessors in possession, after abandonment by tenant, for more than competent witnesses thought property was worth, but not enough to pay amounts due lessors for rent and advances to tenant, held not liable to crop mortgagee for profits realized, though value of cotton exceeded rents, advances,. and lessors' expenses of gathering and marketing crop.

---

⊚⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from Hale County Court; Meade F. Griffin, Judge.

*Action by S. J. Underwood against J. H. Taack and another. Judgment for plaintiff, and named defendant appeals. Reversed and rendered.*

P. B. Randolph, of Plainview, for appellant.

Oxford & Oxford and M. J. Baird, all of Plainview, for appellee.

HALL, C. J. The appellee, plaintiff in the court below, filed this suit against G. M. Wright and J. H. Taack, alleging in substance that on December 7, 1921, Wright executed and delivered to plaintiff a promissory note in the sum of $126 due October 1, 1922, bearing interest at 10 per cent., and providing for attorney's fees, if sued upon and placed in the hands of an attorney for collection. It is further alleged that Wright executed a chattel mortgage to secure said note upon the property described as follows:

"Twenty-five acres of cotton to be planted and grown on the T. L. & D. farm, 7 miles southeast of Hale Center, Tex., in the year 1922."

The mortgage recites that, if the note is not paid at maturity:

"Then the said S. J. Underwood is hereby fully authorized and empowered to take charge of the property hereinbefore described and sell the same at public vendue for cash at Hale Center, Tex., in said county and state, after giving notice of the time, place, and terms of said sale by posting up notices of the said sale in three public places in said county, and the proceeds arising from said sale to be applied to the payment of said note, interest and costs, and the balance, if any, then remaining, to be paid over to me or my legal representatives."

Plaintiff further alleges that Wright did plant said crop of cotton on said premises, planting 120 acres thereof; that the 25 acres of crop so mortgaged were of the reasonable value of $300; that the crop was grown, gathered, and ginned during the season of 1922, and was sequestrated by plaintiff when in the form of four bales of ginned cotton; that said four bales were approximately the pro rata part produced by the 120 acres, which would have been and were gathered from the 25 acres so mortgaged to plaintiff; that about 18 bales were gathered from the entire 120 acres, and that the four bales taken under the writ of sequestration were the part gathered from the 25 acres mortgaged, and were of the value of $400, one-fourth of which belonged to the landlord; that the defendant J. H. Taack is claiming some interest in the cotton and is exercising control thereof, and is made a party defendant. The prayer is for judgment for the amount of plaintiff's debt against Wright, and foreclo-

sure of the mortgage lien, and for general and special relief.

The substance of the amended original answer filed by the defendant Taack is that he had purchased from Minor C. Keith, Chas. H. Zehnder, and H. R. Partridge, trustees, the cotton described in plaintiff's petition; that said trustees were the owners and holders of section No. 8 in Hale county, and as such leased said section to G. M. Wright in October, 1921, by a written contract, under which the lessors should receive as rent one-fourth of the cotton and one-third of all other crops grown on the premises; that it was further agreed that the Texas Land & Development Company, the agent of such trustees, should have general supervision over the land, to decide what crops should be planted thereon. Said contract further provided that, if the tenant should fail to plant or harvest the crops, the trustees should be entitled to go upon the land and do all necessary work to insure first-rate crops thereon, the cost of such work to be charged against the tenant and his share of the crops; that, in default of the payment of rents when due, the trustees could enter the premises, take full possession thereof, and remove all persons therefrom; that during the season of 1921 and 1922 the trustees had advanced Wright various sums of money to enable him to plant and cultivate the crops, in the total sum of $574.05; that Wright had agreed to pay them $50 rent for certain grazing land included in the premises, all of which were secured by their landlord's lien upon the crops in question. Subsequently Wright abandoned the crop and the premises; that the trustees took charge of them under the provisions of the lease contract, and sold said crops to the defendant Taack on September 19, 1922, for the sum of $750, which sum was a reasonable value of said crops then growing on the premises. The defendant Taack further alleges that before he purchased said crops the trustees offered to sell plaintiff said crops, if plaintiff would reimburse them for the advancements made by them to Wright, which offer plaintiff refused, and is therefore estopped from asserting any claim whatever to the cotton levied upon. Wright answered, admitting his indebtedness to plaintiff, and that the mortgage was a valid lien upon the four bales of cotton taken under the writ; that said four bales were grown on the 25 acres mortgaged, and is a prior lien to any interest claimed by Taack.

The questions in issue were submitted to the jury, who found as follows: (1) At the time the defendant Wright left the crops purchased by the defendant Taack, he intended to abandon the same. (2) The value of the cotton produced on said premises, over and above the rents and advances due a landlord, and the expense of gathering and marketing the same is $372.25. Judgment was

rendered in favor of Underwood for the full amount of his note, interest and attorney's fees, and foreclosing the mortgage lien.

[1] The case is submitted here upon numerous propositions but, in our opinion, it will not be necessary to consider them all, and we will not do so in the order in which the contentions are presented. The landlords of Wright were not made parties to the suit. By the 5th proposition it is contended that, because the evidence showed that Wright was the tenant of Keith et al., and that he had abandoned the crop and the premises, and had refused to cultivate the land or harvest the crop, it was the privilege and right of the landlords to take possession of the crop and dispose of the same at the best price obtainable at that time, and out of the proceeds to pay the rent and reimburse themselves for the sums advanced the tenant to enable him to make the crop, and, since the defendant Taack had purchased the crop from the landlords, he could not be held accountable to the plaintiff, who held an inferior lien. We sustain this contention. Vernon's Sayles' Ann. Civ. St. art. 5475, gives the landlord a preference lien upon the crops to secure the payment of all rent, money, provisions, and supplies furnished the tenant to enable the latter to make, harvest, and market the crop raised during the rental year. The landlord's lien in this case is superior to the mortgage lien asserted by Underwood. Frith v. Wright (Tex. Civ. App.) 173 S. W. 453; Harvey v. George Wilder & Co., 62 Tex. Civ. App. 618, 131 S. W. 851.

[2, 3] The evidence supports the finding of the jury that Wright had abandoned the crops. The evidence shows that none of the cotton had been gathered at the time of the abandonment. It is a rule in this state that when a tenant abandons the crop the landlord has "the right and authority to take charge of it and gather and market it, and apply the proceeds of the same to the indebtedness" due from the tenant. Cunningham v. Skinner (Tex. Civ. App.) 97 S. W. 509. Wright did not make the landlords parties to the suit, and ask damages against them for a wrongful exercise of their authority and right to take possession of the crops. The landlords did not evict Wright; nor is it claimed that they wasted the crops, or that they wrongfully or fraudulently exercised their rights in disposing of the property. The landlords would be required to use only ordinary care and diligence, and to exercise good faith in the disposition made by them of the property. When this is done, they are not liable for conversion. Alsbury v Linville (Tex. Civ. App.) 214 S. W. 492. There is no stipulation in the lease contract which limits the rights of the landlords in the event of an abandonment of the premises by Wright.

[4] The ninth paragraph provides that the "tenant shall not vacate the premises and place hired labor in charge, and, in the event of the violation of any of the foregoing conditions, the trustees may cancel this lease and take possession of said property and the crops growing thereon." This stipulation does not bind the landlords to gather the crops and market them; that duty rests upon the tenant under the lease contract. By abandonment of the premises, he repudiated the lease contract, and is in no position to claim any rights thereunder, other than those accorded him by general principles of equity. It is held that, where the tenant has abandoned the premises and the crops, the landlord has the right to enter upon the premises and care for them as if the lease had never been made. Kiplinger v. Green, 61 Mich. 340, 28 N. W. 121, 1 Am. St. Rep. 584; Wheat v. Watson, 57 Ala. 581; Packer v. Cockayne, 3 G. Greene (Iowa) 111; Haller v. Squire, 91 Iowa, 10, 58 N. W. 921; Torrans v. Stricklin, 52 N. C. 50. The reason for the rule is said, in Lennen v. Lennen, 87 Ind. 130, to be that otherwise "an owner of valuable property might be compelled to stand by and see his property go to ruin for want of some one to occupy and care for it." See, also, 14 Ann. Cas. 1089, note; Riddle v. Hodge, 83 Ga. 173, 9 S. E. 786; Kamerick v. Castleman, 23 Mo. App. 481; Woodruff v. Adams, 5 Blackf. (Ind.) 317, 35 Am. Dec. 122.

[5] Taack paid $750 to the landlords for the crop as it stood upon the premises, this included their one-fourth interest in it. Several competent witnesses, farmers, testified that this was more than they thought the property was worth at that time; this evidence is not contradicted. The amount paid by Taack was not sufficient to satisfy the amount due the landlords as rent, and in addition thereto reimburse them for the advances they had made Wright, together with the $50 which Wright had promised to pay as rent for pasture lands. Even if it be admitted that Underwood's mortgage is valid, the property did not sell for enough to leave any surplus in the hands of the landlords which could be subjected to his lien after satisfying their claims. Both parties insist that Taack should be considered as occupying the position held by the landlords. Since the latter were not trespassers, and are not liable as for conversion, Taack cannot be held to account for any profits realized by him through the transaction. As a junior lienholder, Underwood had the right to pay the landlords' claim and be subrogated to their lien, and, though he was given this opportunity, he declined to do so. The finding of the jury, that the value of the cotton produced on the premises over and above the rents and advances due the landlords, together with the expense of gathering and marketing the same, was $372.25, is an immaterial issue. The judgment is reversed, and is here rendered

that the appellee Underwood take nothing, and that the costs of the appeal be adjudged against him.

Reversed and rendered.